IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00480-MSK-CBS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

JOSEPH P. NACCHIO,
ROBERT S. WOODRUFF,
ROBIN R. SZELIGA,
AFSHIN MOHEBBI,
JAMES J. KOZLOWSKI, and
FRANK T. NOYES,

    Defendants.

_____

**OPINION AND ORDER DENYING MOTION TO DISMISS, MOTION TO STRIKE, AND MOTIONS TO ADMONISH**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Szeliga's (hereinafter "Szeliga") Motion to Dismiss or, in the alternative, for a More Definite Statement **(# 173)**, and the Plaintiff's (hereinafter "the SEC") response **(# 180)**; the SEC's Motion to Strike **(# 198)** Defendant Kozlowski's (hereinafter "Kozlowski") Affirmative Defense of Abuse of Process, Kozlowski's response **(# 212)**, and the SEC's reply **(# 217)**; Kozlowski's Motion to Admonish **(# 220)** the SEC, the SEC's response **(# 224)**, and Kozlowski's reply **(# 225)**, and Kozlowski's Motion to Supplement **(# 231)** his Motion to Admonish, the SEC's response **(# 237)**, and Kozlowski's reply **(# 242)**.

## FACTS

With regard to Szeliga's motion, most of the pertinent facts were discussed in detail in the Court's March 29, 2006 Order **(# 186)**, and that discussion is deemed incorporated herein. In summary, the original Complaint **(# 1)**, alleged variously that Szeliga was a participant in several fraudulent schemes involving Qwest Communications International, Inc. ("Qwest"), including failing to disclose the extent of Qwest's reliance on "non-recurring" IRU sales, manipulating the publishing schedule of Qwest's Dex directories to misrepresent the revenues of that unit, by improperly manipulating Qwest's accounting of accrued vacation liabilities to employees, and by engaging in unspecified acts of insider trading. The Complaint asserts seven claims against Szeliga: (i) securities fraud, in violation of 15 U.S.C. § 77q(a)(1); (ii) securities fraud, in violation of 15 U.S.C. § 77q(a)(2) and (3); (iii) securities fraud, in violation of 15 U.S.C. § 78j(b); (iv) falsification of books and records, in violation of 15 U.S.C. § 78m(b)(5); (v) deceit of auditors, in violation of 17 C.F.R. § 240.12b2-2; (vi) aiding and abetting Qwest's filing of false SEC statements, in violation of 15 U.S.C. § 78m(a); and (vii) aiding and abetting Qwest's failure to keep accurate books, in violation of 15 U.S.C. § 78m(b)(2).

In the instant motion **(# 173)**, Szeliga moved to dismiss all of the claims against her, arguing that: (i) with regard to all of the claims, the SEC fails to plead the fraudulent statements with particularity in violation of Fed. R. Civ. P. 9(b) and fail to set forth each claim in a separate count in violation of Fed. R. Civ. P. 10(b); and (ii) with regard to the aiding and abetting claims, the SEC also does not allege a primary violation by Qwest that was aided or abetted by Szeliga. Subsequent to filing a response **(# 180)** to Szeliga's motion, the SEC filed an Amended Complaint **(# 194)**, which appears to differ from the original in some cosmetic respects, as well as in adding a

new paragraph, ¶ 53a, regarding the knowledge of Szeliga, among others, as to the inaccuracy of Qwest's books.

The SEC moves to strike **(# 198)** Defendant Kozlowski's Twenty-Ninth Affirmative Defense in his Answer to the Amended Complaint **(# 195)**. That defense alleges that "The Claims for Relief against Mr. Kozlowski should be dismissed as a result of the SEC's abuse of process vis-a-vis this case against Mr. Kozlowski." The defense goes on to allege that the SEC's suit against him is motivated by an ulterior motive to compel his cooperation is the case against Defendant Nacchio and to "send a message to the accounting community." The SEC contends that: (i) Kozlowski is impermissibly seeking judicial review of administrative decision-making; (ii) Kozlowski's allegations of fact in support of this defense do not sufficiently allege governmental misconduct; (iii) the defense is an effort to obtain discovery of internal agency material that may be subject to various privileges; and (iv) the appropriate remedy, assuming Kozlowski is correct, is not dismissal but rather civil damages or attorney's fees. In response **(#212)**, Kozlowski contends that: (i) courts have refused to strike abuse of process defenses at the pleading stage; (ii) he has adequately pleaded a defense of abuse of process; (iii) discovery related to the defense can be adequately managed by the Magistrate Judge; and (iv) dismissal of the SEC's claims against Kozlowski is an appropriate remedy if the defense is meritorious.[1]

The contentiousness between the SEC and Kozlowski does not end with the disputes over the pleadings, however. Kozlowski moves **(# 220)** for an "Order of Admonishment and to Require SEC to Issue a Meaningful Retraction of Published Comments" by the SEC's former

---

[1] Both parties also devote substantial argument to the relative merits of the SEC's underlying claims against Kozlowski. These arguments are irrelevant to the validity of Kozlowski's abuse of process defense, and the Court does not consider them.

counsel in this case, Mr. Fusfeld.  The motion is occasioned by columnist's article in the Denver *Post* on June 20, 2006, concerning Mr. Fusfeld's retirement from the practice of law.  Titled "Official Hoped to Hook Nacchio," the article begins with a quote by Mr. Fusfeld to the effect that he regrets that his retirement will deprive him of the opportunity to cross-examine Defendant Nacchio, and continues to briefly state the nature of this case.  Kozlowski complains in particular of comments that appear later in the article, which the Court reproduces below – accompanied by the previous paragraph that places the comments in context:

> Fusfeld is only 55, but he's had a long and trying career.  For the past 15 years, he has worked as manager of litigation, overseeing SEC lawsuits in Colorado, Wyoming, Utah, Texas, Oklahoma, Arkansas, Nebraska and both Dakotas.  Over his career, Fusfeld has handled everything from Ponzi schemes and penny-stock scams to complex frauds by major corporations.  And it sounds like he's tired.
>
> "The practice of law has gotten really nasty in the last several years," he told me.  "Defense lawyers will say and do anything. ... There's an awful lot of scorched-earth litigation."
>
> Haven't there always been nasty attorneys?  "There are more of them (today) that weren't breast fed and are pathologically aggressive," he said.
>
> They clog the courts with meaningless motions, make accusations that are patently untrue, take harassing depositions – and they always seem to do this during the end of a month when they need to make their quota of billable hours.
>
> "I can't believe some of the things their clients pay for," Fusfeld said.

Kozlowski contends that "a clear implication (and we submit an intention)" of Mr. Fusfeld is "the disparagement of defense counsel in this matter, to the prejudice of Defendants." Contending that Mr. Fusfeld's comments violate Rule 3.6(a) of the Colorado Rules of

4

Professional Conduct,[2] Kozlowski requests that the Court admonish the SEC not to repeat such conduct, and order the SEC to issue a meaningful retraction to the effect that Mr. Fusfeld's comments "were improper and in no way reflect the views of the SEC."

Kozlowski later moved **(# 231)** to "supplement" his motion to admonish, etc., this time complaining of a press release that had been posted on the SEC's website for the past 18 months. The press release quotes two SEC officials as follows:

> "The disclosure fraud at Qwest was orchestrated at the highest level of the company to deceive investors," said Randall J. Fons, Regional Director of the Commission's Central Regional Office in Denver. "Qwest's CEO and other top executives projected revenue and earnings that they knew were overly aggressive, and then all of the defendants used smoke and mirrors to meet those unrealistic projections. These individuals must now answer for their conduct and the enormous decline in shareholder value they caused."
>
> Steven M. Cutler, Director of the Commission's Division of Enforcement, added, "Joseph Nacchio and others at Qwest wanted the company's shareholders to believe that the company was doing better than it actually was. Today's enforcement action once again tells corporate executives that they will be held personally accountable when they keep the truth from the marketplace."

Kozlowski compares these quotes to a newspaper account of an incident in which Judge Nottingham, presiding over a criminal case against Defendant Nacchio, "reportedly rebuked" an Assistant United States Attorney for making comments to the effect that the criminal case against Defendant Nacchio was important because insider trading "affects the integrity of our stock market and, more importantly, really attacks our sense of fair play." According to Kozlowski, the

---

[2]"[A] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

article reported that Judge Nottingham found that the comment "'teeters on the brink of violating' the code of professional responsibility," and that "he wouldn't hesitate to sanction [the prosecution] if they say anything inconsistent with the presumption of innocence."

## ANALYSIS

### A. Szeliga's motion

In most material respects, Szeliga's Motion to Dismiss asserts the same legal and factual arguments put forth by the other Defendants, and the Court incorporates by reference its analysis of those legal and factual issues in its March 29, 2006 Order. In summary, the Court cannot dismiss the claims against Szeliga unless, viewing all of the allegations in the Amended Complaint[3] as true, it appears beyond doubt that the SEC can prove no set of facts that would establish those claims for relief. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Szeliga does not allege that the Complaint fails to allege any of the necessary elements of the claims against her, but rather, challenges only whether the SEC has pleaded its averments of fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b), and whether it has adequately stated claims arising from different transactions or occurrences separately, as required by Fed. R. Civ. P. 10(b).

Fed. R. Civ. P. 9(b) requires averments of fraud to be pled with "particularity," so as to

---

[3] Although Szeliga's motion was directed at the allegations of the original Complaint, the SEC's subsequent filing of the Amended Complaint operates to supplant the original Complaint in its entirety. Rather than deeming Szeliga's motion moot as a result of the Amended Complaint, the Court treats it as being asserted against the allegations in the Amended Complaint as well.

6

give a defendant "fair notice of the plaintiff's claims and the factual ground upon which they are based." *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). To satisfy the particularity requirement, a plaintiff is generally required to "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Id.* Of course, where the fraud is allegedly committed by omission, one cannot set forth the "time, place and contents" of something that was never said; in these circumstances, it is sufficient under Rule 9(b) for the SEC to allege the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed. Of particular note, where misstatements or omissions are made in "group-published documents," Rule 9(b) is satisfied if the Amended Complaint sufficiently identifies an individual's responsibility for the contents of the document. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir. 1997).

The Court finds that the Amended Complaint identifies misrepresentations or omissions by Szeliga with sufficient particularity. For example, paragraph 54 alleges that Szeliga, among others, determined what information about Qwest's revenues would be disclosed to the public in SEC 8-K and 10-Q reports. This is sufficient to charge her with responsibility for any misrepresentations or omissions in these group-published documents. Paragraph 52 alleges that Szeliga failed to disclose the fact that Qwest's revenue from IRU sales was "non-recurring," and that that information should have been disclosed in Qwest's revenue reports between July 1999 and August 2001. This is sufficient to identify the subject matter of the omitted information, and the time at which the information should have been disclosed. Paragraph 51 alleges that the

information was material, because investors discounted revenues from "non-recurring sources." This is sufficient to identify the consequences of Szeliga's omission. Similarly, paragraph 70 identifies Szeliga as attesting to the accuracy of Qwest's 1999 10-K, and paragraph 69 alleges that that 10-K omitted a material disclaimer about the nature of Qwest's IRU sales, and that Szeliga knew that the information had been omitted. These allegations are sufficient to identify acts of fraud underlying the securities fraud claims with the degree of particularity required by Rule 9(b).[4]

Szeliga's other argument is that the Amended Complaint violates Fed. R. Civ. P. 10(b). That rule states that "Each claim founded upon a separate transaction of occurrence . . . shall be stated in a separate count [ ] whenever a separation facilitates the clear presentation of the matters set forth." There is no dispute that the SEC has pleaded numerous distinct counts against Szeliga, and that each count asserts a single, discrete claim for relief. However, Szeliga appears to argue that each claim for relief, to the extent it is founded on separate transactions or occurrences, must be pleaded separately – *i.e.* that the SEC must allege several distinct claims of securities fraud under 15 U.S.C. § 77q(a)(1), one for fraud related to IRU sales, one for fraud relating to Dex publishing, one for fraud related to adjustment of vacation liabilities, etc. Although the organization and presentation of the issues in the Amended Complaint leaves much to be desired, the Court is not prepared to say that a restructuring along the lines contemplated by Rule 10(b) would meaningfully facilitate a clearer presentation of the issues. It is abundantly clear to the Court that the securities fraud claims against Defendant Szeliga arise from alleged

---

[4] *See also* ¶ 116, 117 (Szeliga's responsibility for 2000 10-K report that omitted material facts about the Dex publishing schedule change); ¶ 126 (Szeliga's responsibility for 2001 10-Q and 10-K reports that omitted material facts about her adjustments of vacation liabilities).

8

misrepresentations and omissions in several discrete areas – IRU sales, Dex publishing, vacation liabilities – and Szeliga's ability to respond to the Amended Complaint is not materially compromised by the fact that a single set of securities fraud claims encompasses all of these areas.

Thus, the Court finds that a redrafting of the Amended Complaint in conformance with Rule 10(b) is not warranted. At the same time, the lack of clarity and precision in the Amended Complaint is a factor that the Magistrate Judge may consider in determining the extent and scope of the discovery requests the parties may be permitted to propound. The standards that permit the SEC to engage in highly-generalized notice pleading also contemplate that the Defendants will be afforded liberal discovery to flesh out issues that are obscured in the Amended Complaint. *See e.g. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

### B. The SEC's motion

The SEC moves to strike Kozlowski's affirmative defense of abuse of process. A motion to strike an affirmative defense as insufficient is adjudicated under the same standard as a motion to dismiss: namely, the Court must strike the defense only if it cannot be maintained under any set of circumstances. *See e.g. Unger v. U.S. West, Inc.*, 889 F.Supp. 419, 422 (D. Colo. 1995); *Resolution Trust Co. v. Tri-State Realty Investors of Kansas City, Inc.*, 838 F.Supp. 1448, 1450 (D. Kan. 1993).

As Kozlowski points out, several courts have permitted a defense of abuse of process to survive beyond the pleading stage. *See e.g. Wellman v. Dickinson*, 79 F.R.D. 341, 351 (S.D.N.Y. 1978) (expressing doubt as to availability of the defense, but declining to strike it at the pleading stage in favor of development of a full factual record); *SEC v. Downe*, 1994 WL 67826 (S.D.N.Y.

March 3, 1994) (unpublished) (same). Interestingly, all of Kozlowski's cases express skepticism as to the availability or applicability of the defense, and Kozlowski does not cite any case in which a court has actually granted any relief to a defendant on a defense of abuse of process by the SEC. Although it is highly unlikely that the Kozlowski's allegations, even if proven, demonstrate sufficiently egregious conduct and prejudice to warrant relief, *see e.g. SEC v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 73 (D.Conn.1988) ("Where courts have permitted equitable defenses to be raised against the government, they have required that the agency's misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level"), the Court cannot say that the defense is impossible to establish, such that striking is appropriate. Accordingly, the SEC's motion is denied.

This is not to say, however, that Kozlowski should be given free rein to pursue the defense at this time. Indeed, several factors suggest that restraint is the best course to chart with regard to the defense. First, as noted above, there is little persuasive authority endorsing the defense. Second, the SEC's concern that Kozlowski may seek privileged agency material in furtherance of his discovery on this defense is one that warrants serious consideration. Third, contemplation of the defense reveals an intriguing paradox: if the SEC prevails on its claims against Kozlowski, such a victory necessarily negates any assertion by Kozlowski that the proceedings were commenced without reasonable basis in fact and solely for some ulterior purpose. If Kozlowski prevails completely on the merits of the SEC's claims, there may be little utility in contemplating a defense of abuse of process, except insofar as it might entitle Kozlowski to an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The defense of abuse of process – to the extent it even exists – is thus extrinsic to the merits of the case. As such, it may

be logical to address this defense after an adjudication on the merits has been made. In this regard, the Court notes that Kozlowski does not contend that he is entitled to a jury trial on the defense, or that, even if he is, he must be allowed to present the defense to the same jury that hears the merits of the SEC's claims.

### C. Koslowski's motions

The precise basis upon which Kozlowski moves to admonish the SEC is not clear to the Court. To the extent that Kozlowski believes that the comments by Mr. Fusfeld (and, if they are lawyers, Mr. Fons and Mr. Cutler) constitute breaches of the Colorado Rules of Professional Conduct, the appropriate remedy is to file a grievance with the Colorado Bar Association. To the extent that Kozlowski (or his counsel) believes that these comments are defamatory, relief may be had in a properly commenced civil suit. To the extent that Kozlowski contends that the comments are so inflammatory as to constitute unduly prejudicial pretrial publicity, he has failed to make anything more than a speculative and conclsuory showing that such prejudice has or is likely to occur. To the extent that Kozlowski simply wants the Court to intervene to prevent uncivil exchanges between counsel or between the parties, the Court declines to do so.

This is a civil case; references to admonitions made in ancillary criminal matters are inapt. The Court's role in this case is to address the parties' dispute and to ensure that such dispute is determined by application of the law following a full and fair hearing. Disputes among attorneys[5]

---

[5]The Court notes that Kozlowski has not shied away from launching his own barbs at the SEC. *See e.g. Docket* # 212 at 4 n. 3 (suggesting that the SEC made misleading allegations as to Kozlowski in the original Complaint in an attempt to "garner[ ] the intended media splash"), at 7 ("as the SEC uses its motion to misstate the standard to be applied in this case on the underlying assertion of securities fraud, we are obliged to show just how wrong the SEC is"); and at 8 ("The SEC could not be more wrong").

11

are, unfortunately, too common, unseemly and often detrimental to the public's perception of the judicial process. However, unless such disputes impact these parties' rights, they should remain external to this litigation. No showing having been made that any of the complained of acts have or will impact the parties' rights in this case, both of Kozlowski's motions are denied.

## CONCLUSION

For the foregoing reasons, Szeliga's Motion to Dismiss or, in the alternative, for a More Definite Statement **(# 173)** is **DENIED**. The SEC's Motion Motion to Strike **(# 198)** Kozlowski's Affirmative Defense of Abuse of Process is **DENIED**, but the parties shall engage in no further discovery or motion practice with respect to this defense until the merits of the SEC's claims against Kozlowski have been resolved. Kozlowski's Motion to Admonish **(# 220)** and Kozlowski's Motion to Supplement **(# 231)** his Motion to Admonish are **DENIED**.

Dated this 27th day of September, 2006

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge