IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00480-MSK-CBS

SECURITIES AND EXCHANGE COMMISSION,
     Plaintiff,
v.

JOSEPH P. NACCHIO,
ROBERT S. WOODRUFF,
ROBIN R. SZELIGA,
AFSHIN MOHEBBI,
JAMES J. KOZLOWSKI, and
FRANK T. NOYES,
     Defendants.

---

## MEMORANDUM ORDER REGARDING DEFENDANT KOZLOWSKI'S MOTION TO COMPEL IN CONNECTION WITH REQUEST NO. 20 OF HIS REQUESTS FOR PRODUCTION

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendant KOZLOWSKI's Motion to

Compel in Connection with Request No. 20 of his Requests for Production to the Securities and

Exchange Commission (doc. # 255), filed on October 13, 2006.[1]  Defendant Kozlowski argues

that Plaintiff has failed to present sufficient facts and legal precedents to establish that responsive

documents properly fall within the work product doctrine.  Plaintiff Securities and Exchange

Commission ("SEC" or "Commission") filed its Response on November 2, 2006.  Defendant

Kozlowski filed a Reply in Support of His Motion to Compel on November 17, 2006.

The District Court's Order of Reference, dated April 11, 2005, referred this action to the

---

[1]On December 7 2006, Defendant Frank Noyes requested leave to join Defendant
Kozlowski's Motion to Compel regarding his Request for Production No. 20.

Magistrate Judge with instructions to, *inter alia*, "hear and determine motions relating to discovery" and "hear and determine such other non-dispositive motions as may be specifically referred." The instant motion was referred to this Magistrate Judge on October 13, 2006. The court has reviewed the parties' briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the following reasons, Defendant Kozlowski's motion is denied.

### FACTUAL BACKGROUND

On March 15, 2005, the SEC filed its Complaint in the instant case. That Complaint alleges generally that during the period from April 1, 1999 through March 31, 2002, certain "senior executives and others at Qwest Communications International, Inc. engaged in a massive financial fraud that hid from the investing public the true source of the company's revenue and earnings growth, [and] caused the company to fraudulently report approximately $3 billion of revenue." *See* Complaint, at ¶ 1. The SEC further contends that "during the fraudulent scheme, the defendants profited by approximately $300,000,000 through salary, bonuses, stock sales, and other compensation." *Id.* at ¶ 10.

The United States moved to intervene in this action on July 26, 2005, suggesting that the subject matter of this case "is directly related to the facts" underlying an ongoing criminal investigation and two pending criminal matters and expressing a fear that civil discovery might result in the premature disclosure of sensitive information that is important to the government's prosecution of those criminal matters. At the same time, the United States sought to stay all discovery in this case for a minimum of 150 days. This court granted a preliminary stay of discovery on July 28, 2005.

On February 28, 2006, I issued an Order Regarding Discovery (doc. # 176) which permitted discovery to proceed on a restricted basis.  While the court continued to stay all depositions, I allowed Defendants Kozlowski and Noyes to serve fifty interrogatories and 30 requests for production on the Securities and Exchange Commission.[2]

Defendant Kozlowski served on the SEC his First Set of Requests for Production of Documents on March 7, 2006.  Request for Production No. 20, which is the subject of the instant motion, requested

> memoranda, position statements or papers, presentations, staff comments and other documents prepared by the SEC relating to accounting for IRU and/or equipment sales transactions (note: this Request is not limited to Qwest IRU and/or equipment sales transactions).

See Exhibit A-1, at p. 3, attached to Defendant Kozlowski's Motion to Compel.  The Commission objected to this Request to the extent it seeks documents that are protected by privileges or the work product doctrine.  Plaintiff indicated that the following materials would not be produced on the basis of the attorney-client privilege and/or the work product doctrine:  (i) notes made by Commission staff; (ii) e-mails between Commission staff; and  (iii) internal memoranda prepared by Commission staff which were not circulated outside the Commission.  Id., at pp. 3-4.

On June 30, 2006, the SEC provided Defendant Kozlowski's counsel with "privilege logs identifying the particular doctrines or privileges which protect the documents the Commission is withholding from discovery regarding" Request No. 20.  See Exhibit A-3, attached to Defendant Kozlowski's Motion to Compel.  In the cover letter that accompanied this privilege log, the SEC acknowledged that it had not listed each individual document that had been withheld, but insisted

---

[2]On September 28, 2006, the court further modified its stay to allow limited deposition discovery.

that responsive documents had been described "in a manner that will protect the privileged information and enable you and the Court to assess the applicability of the privilege." *Id.* As to the Commission's assertion of the work product doctrine, Defendant Kozlowski was advised that documents responsive to Request No. 20 had been withheld because they "were authored or compiled by a Commission attorney, accountant, paralegal or legal intern and during Commission investigations concerning whether the Commission should file litigation alleging violations of the securities laws or during one the resulting litigations." *Id.* Plaintiff insisted that

> requiring the Commission to locate and log each privileged document individually would be unduly burdensome, because these requests seek a voluminous number of privileged documents. The burden of locating and listing each document individually is outweighed by the lack of any corresponding benefit from listing additional information in determining whether the privileges apply.

*Id.* The privilege log provided on June 30, 2006 simply indicated that pertinent documents had been authored by "SEC lawyers and accountants." The log did not indicate who might have received or had access to the withheld materials, nor indicate when these materials had been prepared.

Not surprisingly, Defendant Kozlowski found the Commission's unsubstantiated claims of privilege and undue burden less than persuasive. *Cf. Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65, 69-70 (W.D.N.Y. 2003) (in response to a motion to compel, a party asserting a burdensomeness objection must provide "an affidavit of a person with knowledge of the record keeping system with the requested party explaining in reasonable detail the factual basis for such an objection"). In a letter dated July 14, 2006, the SEC indicated that it "has at least 6000 to 8000 emails relating to the Qwest matter and at least nine boxes of notes consisting of more than 10,000 pages." *See* Exhibit A-4, attached to Defendant Kozlowski's Motion to Compel.

4

This court held a discovery conference on August 28, 2006, during which Defendant Kozlowski's counsel expressed concern over the lack of information contained in the SEC's privilege log. Defendant maintained that the privilege log did not adequately explain or support the Commission's assertion of the work product doctrine in connection with documents prepared "during the 2002-2003 time frame." *See* Transcript of Proceedings on August 28, 2006, at p. 53. This court declined to decide any privilege issues on the basis of counsels' representations at the August 28th hearing, opining that "the SEC . . . should be afforded an opportunity to come forward with affidavits or other factual material to support" its invocation of the work product doctrine. *Id.*

On September 15, 2006, the SEC tendered a supplemental privilege log that provided additional information regarding documents withheld in response to Request No. 20. *See* Exhibit A-5 attached to Defendant Kozlowski's Motion to Compel. The supplemental privilege log identified by name the individuals who had authored responsive documents withheld on the basis of the work product doctrine, as well as identified by name individuals who had access to these materials. The supplemental privilege log indicates that only SEC attorneys and accountants had access to the materials being withheld. As for the dates of the responsive documents, the supplemental privilege simply indicated "2/26/02 through present."

With the pending motion, Defendant KOZLOWSKI specifically seeks to compel production of three categories of documents which the SEC has withheld in response to Defendant's Request for Production No. 20:

> (1)   "handwritten notes [including notes prepared by SEC accountants re accounting for IRUs and equipment sales" prepared from February 2002 to present;

(2)    "internal memoranda and typed notes [including those prepared by SEC accountants] relating to accounting for IRUs and equipment sales" prepared from February 2002 to present;

(3)    "internal SEC correspondence [including correspondence from SEC accountants] relating to accounting for IRUs and equipment sales" from February 2002 to present.

*See* Defendant Kozlowski's Motion to Compel, at p. 5.  In support of the requested relief, Kozlowski argues that the SEC has failed to sustain its burden of establishing an evidentiary basis for its assertion of the work product doctrine.

In opposition to Defendant Kozlowski's motion, the SEC proffered the Declaration of Mary S. Brady, who is identified as an Assistant Regional Director in the Central Regional Office of the Enforcement Division of the Securities and Exchange Commission and the individual responsible for supervising the SEC's investigation of Qwest Communications International, Inc. Ms. Brady's Declaration describes in general terms the process utilized by the Enforcement Division to initiate investigations of possible violations of federal securities laws.  *See* Declaration of Mary S. Brady, at ¶ 2, attached to Securities and Exchange Commission's Response.  The Brady Declaration goes on to state that in February 2002, the Enforcement Division opened an informal investigation based on "a suspicion that Qwest and/or its employees had violated or were violating the federal securities laws."  Ms. Brady indicated that this informal investigation was instituted "to obtain evidence confirming whether Qwest and/or its employees had violated the federal securities laws, and the investigation was conducted in anticipation of litigation."  *Id*. at ¶ 3.  According to the Brady Declaration, on February 14, 1002, the Enforcement Division began drafting an Action Memorandum requesting that the Commission issue a Formal Order in the Qwest matter.  That Formal Order was issued by the Commission on April 3, 2002.  *Id.* at ¶ 4.

The penultimate paragraph in the Brady Declaration states that Ms. Brady has

reviewed the SEC's privilege log in response to Mr. Kozlowski's Request for
Production No. 20. The handwritten notes, internal memoranda, and internal SEC
correspondence regarding the accounting for IRU and equipment sales were
prepared during the Enforcement Division's investigation of the Qwest matter in
furtherance of the Division's purposes in confirming the suspicion that Qwest
and/or its employees were violating or had violated the federal securities laws and
determining if there was sufficient admissible evidence to successfully prosecute
those violations. The requested materials were created in anticipation of litigation
after the Division had a suspicion that Qwest and/or its employees had violated the
federal securities laws based on information available at that time. The requested
materials contain mental impressions, conclusions, and legal theories and opinions,
and were created by SEC lawyers or accountants under the supervision of SEC
lawyers.

*See* Brady Declaration, at ¶ 7. Plaintiff contends that Ms. Brady's Declaration "provides a more

than sufficient factual basis to support application to (sic) the work product protection to the

documents Kozlowski seeks." *See* Securities and Exchange Commission's Response, at p. 7.

The court heard oral arguments on Defendant Kozlowski's Motion to Compel on

December 11, 2006. At the conclusion of that hearing, I permitted the Securities and Exchange

Commission to supplement its Response by submitting materials for the court's *in camera* review.

On December 15, 2006, the SEC provided the court with copies of the Enforcement Division's

March 20, 2002 Action Memorandum and the Commission's April 3, 2002 Order. These

materials were reviewed *in camera* and considered by the court in deciding the pending motion.

## ANALYSIS

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the

interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of

information. *United States ex rel. Schwartz v. TRW, Inc.*, 2002 WL 31688812, *3 (C.D. Cal.

2002). To that end, Rule 26(b) permits discovery "regarding any matter, *not privileged*, that is

relevant to the claim or defense of any party" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed.R.Civ.P. 26(b)(1) (emphasis added). *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense). The party resisting discovery on grounds of privilege or the work product doctrine bears the burden of coming forward with facts that would sustain their claim. *Cf. Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 373 (D. Colo. 1993). *See also Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 643 (S.D.N.Y. 1991) (a government agency asserting the attorney-client privilege has the same obligation to establish all elements of the asserted privilege).

By excluding "privileged" information from the broad parameters of pre-trial discovery, Rule 26 attempts to strike a balance between conflicting interests. Privileges further the administration of justice and "should not be set aside lightly." *See Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002); *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991). However, privileges also have the effect of withholding relevant information from the finder of fact, and for that reason should be narrowly construed. *See Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995). For the same reason, the party withholding information on the basis of privilege must make a clear showing that the asserted privilege applies and must establish all elements of the privilege. *National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994). *Cf. McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D. Kan. 2000) (the party invoking the work product doctrine must establish all elements of the doctrine through an evidentiary showing based

8

on competent evidence; "the burden 'cannot be discharged by mere conclusory or ipse dixit assertions'"); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ( "a mere allegation that the work product doctrine applies is insufficient").

The work-product doctrine protects from discovery documents or tangible things obtained or prepared in anticipation of litigation, as well as the attorney's thought processes, opinions, conclusions and legal theories. *Religious Technology Center v. F.A.C.T.Net, Inc.*, 945 F. Supp. 1470, 1480 (D. Colo. 1996). *See also* Fed.R.Civ.P. 26(b)(3) (providing that while a party may, only upon a proper showing of substantial need, obtain documents and tangible things prepared in anticipation of litigation or for trial, "the court shall protect against disclosure of the mental impression, conclusions, opinions or legal theories of an attorney or other representative of the party concerning the litigation").  The work product doctrine seeks to protect the adversary system and "rests on the belief that such promotion of adversary preparation ultimately furthers the truth finding process." *Khandji v. Keystone Resorts Management, Inc.*, 140 F.R.D. 697, 699 (D. Colo. 1992) (quoting *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84, 99 (E.D.N.Y. 1981)).

> A "primary function" of the work product doctrine "is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case.

*United States v. Bagley*, 212 F.R.D. 554, 560 (C.D. Cal. 2003) (internal citations omitted).  *See also Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (observing that the work product doctrine permits an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless

interference"). The work-product doctrine must be applied in a commonsense manner and on a case-by-case basis. *St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620, 630 (N.D. Iowa 2000).

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides, in pertinent part, that absent the requisite showing, a party may not obtain discovery of documents or other tangible things otherwise discoverable that were "prepared in anticipation of litigation or for trial" by that party or its representatives.[3] The disposition of Defendant Kozlowski's motion to compel hinges on the court's application of the "anticipation of litigation" requirement to the factual record in this particular case.

Case law broadly defines the parameters of the "anticipation of litigation" element. Application of the work product doctrine does not turn on whether litigation actually ensued. *Kent Corp. v. NLRB,* 530 F.2d 612, 623 (5th Cir. 1976), *cert. denied*, 462 U.S. 19 (1983). "Documents should be deemed prepared for litigation and within the scope of [Rule 26(b)(3)] if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospective of litigation." *State of Maine v. United States Department of Interior*, 298 F.3d 60, 68 (1st Cir. 2002). *Cf. National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (a document is "prepared in the anticipation of litigation if 'the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation'"); *Nesse v. Pittman*, 202 F.R.D. 344, 349 (D.D.C. 2001) (holding that the

---

[3]For purposes of the instant motion, the parties do not appear to dispute that the materials sought are documents or other tangible things. There also appears to be general agreement that the materials in question were prepared by or for a party or a representative of that party.

requirements of Rule 26(b)(3) are met whenever materials are prepared in light of a lawyer's subjective and objectively reasonable belief that litigation is a "real possibility").  However, Rule 26(b)(3) requires more than an inchoate possibility of litigation.  *McCoo v. Denny's Inc.*, 192 F.R.D. at 683.  *See also United States v. KPMG, LLP*, 316 F. Supp.2d 30, 41 (D.D.C. 2004) (hold that the "anticipation of litigation" requirement contemplates something more concrete that a "mere mention of fear of being sued for an action or inaction"); *Garfinkle v. Arcata National Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y. 1974) (Rule 26(b)(3) "requires a more immediate showing than the remote possibility of litigation").

Rule 26(b)(3) does not contemplate a different standard for cases involving government agencies.  Certainly, the work product doctrine does not apply automatically to any and all investigations undertaken by government agencies.  *See, e.g., General Electric Co. v. Johnson*, 2006 WL 2616187, *11 (D.D.C. 2006) (observing that "documents that relate only generally to a broad agency program that is investigatory or adversarial in nature are not properly considered to have been 'prepared in anticipation of litigation'"); *Reich v. Great Lakes Collection Bureau, Inc.*, 172 F.R.D. 58, 61 (W.D.N.Y. 1997) (noting that investigations of employee complaints are undertaken in the ordinary course of the Department of Labor's activities, are not conducted by attorneys, and do not automatically lead to litigation); *Securities and Exchange Commission v. National Student Marketing Corp.*, 1974 WL 415, *8 (D.D.C. 1974) (suggesting that papers prepared by an agency during an investigative phase – "when the agency accumulates and evaluates factual material" – are not necessary subsumed within the work product doctrine). However, courts have acknowledged that an "investigation by a federal agency presents more than a remote prospect of future litigation."  *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D.

11

Colo. 1993) (in permitting corporate employer to assert the work product doctrine, held that a communication from the Department of Labor provided reasonable grounds to anticipate litigation).  *See also In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004) (agreeing that "once a governmental investigation has begun, litigation is sufficiently likely to satisfy the 'anticipation' requirement"); *Abdallah v. The Coca-Cola Co.*, 2000 WL 33249254, *5 (N.D. Ga. 2000) (noting that "[l]itigation may generally be expected from agency investigations"); *Fine v. United States Department of Energy*, 823 F. Supp. 888, 903 (D.N.M. 1993) ("the existence of an active investigation is strong circumstantial evidence that an agency lawyer prepared the document with future litigation in mind").

While these and other reported opinions inform this court's decision, resolution of the pending motion must be guided by the particular facts in this case.  Factors that the court may consider in deciding whether a document is prepared in anticipation of litigation or in the ordinary course of business include: (1) the nature of the documents at issue; (2) the nature of the litigation; (3) the relationship between the parties; (4) the involvement of counsel; and (5) the time when the document was created.  *Kidwiler v. Progressive Paloverde Insurance Co.*, 192 F.R.D. 536, 542 (N.D. W.Va. 2000).[4]

---

[4]Another court, in litigation involving the Internal Revenue Service, suggested that the following factors tend to support a finding that internal agency documents were not prepared in anticipation of litigation:

(1) the reports are routinely prepared in each case and before filing of any lawsuit;
(2) they are not prepared by or at the direction of an attorney who would actually try the case if litigation should develop;
(3) if the reports are impartial as between the taxpayer and the government, they are not designed to be adversarial in nature;
(4) the documents in all probability do not fix the government's theory of the case to be used at trial . . . ;

The court has carefully considered the exhibits appended to Defendant Kozlowski's briefs, the Declaration of Mary Brady attached as an exhibit to the Commission's Response, and the documents provided for the court's *in camera* review.  Based upon this record, I find that by February 2002 the Commission's Enforcement Division had initiated an investigation that reflected a subjective believe that litigation directed against Qwest International and/or Qwest employees was a real possibility.  I further find, based on my *in camera* review, that the Enforcement Division's subjective view was objectively reasonable.  *See, e.g., United States v. Roxworthy*, 457 F.3d 590, 593-94 (6th Cir. 2006) and cases cited therein.  The Enforcement Division's March 20, 2002 Action Memorandum referred to specific information that was known by the SEC in February 2002, and identified specific events and individuals who were suspected of enumerated statutory and regulatory violations.  This Action Memorandum also identified specific SEC employees, including attorneys, who would be connected with the investigation.[5] *Cf. Securities and Exchange Commission v. Cavanagh*, 1998 WL 132842, *2 (S.D.N.Y. 1998) (holding that the SEC had sustained its burden of persuasion under Rule 26(b)(3) where the documents at issue were prepared by SEC attorneys as part of an investigation undertaken "to provide the Commission with information so that it could make the determination whether to proceed with litigation in this matter").  On April 3, 2002, the Commission issued a formal Order

---

(5) the reports are not the result of the government's own investigative work, but of evidence submitted both by the taxpayer and by the government.

*Abel Investment Co. v. United States*, 53 F.R.D. 485, 489 (D. Neb. 1971).

[5]*Cf. United States ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 480 (D. Utah 2001) (holding that documents were protected by the work product doctrine where the materials at issue were prepared at the direction and under the supervision of attorneys investigating allegations in the pending action).

Directing Private Investigation and Designating Officers to Take Testimony.  Based on the content of the Action Memorandum and the Commission's Order, the court concludes that by February 2002, the Enforcement Division had embarked on a process that clearly reflected an adversarial perspective and a particularized focus.  *Cf. SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (holding that where an attorney prepares a document in the course of an active investigation focusing on specific events and a specific possible violation by a specific party, he or she has litigation sufficiently "in mind" for that document to qualify as attorney work product); *Feshbach v. Securities and Exchange Commission*, 5 F. Supp.2d 774, 783 (N.D. Cal. 1997) (applying the work product doctrine to internal SEC documents after finding that the agency's examination "was based on a suspicion of specific wrongdoing and represented an effort to obtain evidence and to build a case against the suspected wrongdoer"); *In re LTV Securities Litigation*, 89 F.R.D. 595, 612 (N.D. Tex. 1981) ("from the moment the SEC investigation commenced with the issuance of subpoenas . . . , LTV was virtually assured of a civil suit").  *Compare United States v. Ernstoff*, 183 F.R.D. 148, 156-57 (D.N.J. 1998) (declining to find that Department of Justice documents were prepared in anticipation of litigation, where the materials in question were prepared under a system of random testing rather than in response to a specific complaint).

Admittedly, the Commission's investigation of transactions and the accounting practices of Qwest International Communications extended over a number of years.  However, the passage of time alone is not dispositive of the Commission's work product claim.  *Cf. United States v. Gericare Medical Supply Inc.*, 2000 WL 33156442, *3 (S.D. Ala. 2000) (holding that the mere passage of time while a party prepares its case does not retroactively eliminate an anticipation of

litigation that existed when the documents were created). The court also acknowledges that the focus of the SEC's investigation apparently expanded over time to include additional individuals. That fact does not undermine the Commission's invocation of Rule 26(b)(3). The work-product doctrine is applicable even if the documents at issue were not prepared in the course of on-going litigation against the specific party seeking production of that document. *See also In re Lernout & Hauspie Securities Litigation*, 222 F.R.D. 29, 35 (D. Mass. 2004) (quoting *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 151 (D. Del. 1977) (recognizing that "the fact that litigation may still be a contingency at the time the document is prepared has not been held to render the [work product] privilege inapplicable, if the prospect of litigation is identifiable because of claims that have already arisen").

Defendant Kozlowski argues that the Commission has failed to make a sufficient factual showing to support its reliance on the work product doctrine. Kozlowski dismisses the Brady Declaration as offering nothing more than a bare assertion that the requested documents were prepared in anticipation of litigation. Clearly, Rule 26(b)(3) requires more than a cursory or conclusory proffer. *See, e.g., Guardsmark, Inc. v. Blue Cross & Blue Shield*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002) (rejecting an invocation of the work product doctrine that relied solely on an affidavit that contained only conclusory statements). However, a party may expand the record to further clarify conclusory assertions presented in initial affidavits or declarations. *Cf. United States v. Roxworthy*, 457 F.3d at 596-97.

Defendant Kozlowski contends the Commission's own statements refute any suggestion that the requested documents were prepared in anticipation of litigation. In particular, Kozlowski refers to correspondence from various Commission representatives, including Ms. Brady, which

advised putative witnesses that the SEC was conducting a "non-public, fact-finding inquiry" in an effort "to determine whether there have been any violations of the federal securities laws." *See* Defendant Kozlowski's Motion to Compel, at p. 10. I am not persuaded by this particular argument. Underlying Defendant Kozlowski's position is the notion that a bright line can be drawn between the pre-litigation fact-finding process and the actual decision to commence litigation. In this case, Kozlowski seemingly would limit the work product doctrine to those materials prepared after the SEC made its decision to commence actual litigation. That view is contrary to the weight of established precedents. *See, e.g., In re Sealed Case*, 146 F.3d, 881, 888 (D.C. Cir. 1998) (holding that the work product doctrine protects documents prepared in anticipation of litigation, regardless of whether the anticipated litigation ever occurs); *United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998) (interpreting the reference in Rule 26(b)(3) to documents "prepared in anticipation of litigation" to subsume a different and broader category of materials than would be encompassed by the phrase "or for trial").

This court is not persuaded to reach a different result based upon the decisions in *Securities and Exchange Commission v. National Student Marketing Corp.*, 1974 WL 415 (D.D.C. 1974) and *Securities and Exchange Commission v. Thrasher*, 1995 WL 46681 (S.D.N.Y. 1995), which figure prominently in Defendant Kozlowski's motion. In *National Student*, the district court acknowledged the difficulty in determining a "clear cut" point at which investigative activity transforms into litigation. While that court declined to extend the work product doctrine to agency documents that were "more exploratory in nature," it concluded that a draft memorandum to the Commission recommending institution of injunctive action and detailing the basis for the staff's conclusions was "drafted with the expectation of litigation." *Securities and*

*Exchange Commission v. National Student Marketing Corp.*, 1974 WL 415, *9 (D.D.C. 1974). Based on the information provided for my *in camera* review, I find that the SEC's documents warrant similar treatment.

The SEC's assertion of the work product doctrine also became an issue in *Securities and Exchange Commission v. Thrasher*, 1995 WL 46681 (S.D.N.Y. 1995). Unlike the instant case, in *Thrasher* the disputed documents involved "notes taken by Commission representatives during the course of interviews" with cooperating witnesses. The district court in *Thrasher* concluded that the SEC had not sustained its burden of persuasion under Rule 26(b)(3) after noting that the Commission had not offered

> testimony with regard to the interview notes, much less establish[ed] the precise purpose of the notes, whether a decision had been made to litigate at the time they were created, whether the Commission was contemplating other alternatives at the time, and whether their notes were treated with the requisite confidentiality.

*Id.* at *3. The *Thrasher* court concluded that "[a]t the very least, the proponent of the work-product rule must show that 'some articulable claim, likely to lead to litigation [has] arisen.'" *Id.* at *4, quoting *Martin v. Valley National Bank*, 140 F.R.D. 291, 308 (S.D.N.Y. 1991). As noted, this court has concluded that such articulable claims existed in this case, at the very least, by February 2002.

Defendant Kozlowski's motion also challenges the adequacy of the SEC's privilege log. Kozlowski cites the Commission's failure "to describe the withheld documents at issue in sufficient detail for anyone, including the Court, who has not actually reviewed the documents to conclude one way or the other" that the withheld documents contain mental impressions, conclusions, opinions or legal theories properly encompassed by the work product doctrine. *See*

17

Defendant Kozlowski's Reply in Support of His Motion to Compel, at fn. 2.

The Federal Rules of Civil Procedure require that where a party withholds otherwise relevant information by claiming it is privileged or subject to protection as trial preparation material, that party "shall describe *the nature* of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." *See* Fed.R.Civ.P. 26(b)(5) (emphasis added).  While, in the typical case, a Rule 26(b)(5) privilege log will individually list withheld documents and provide pertinent information for each document, this is not an inflexible requirement.

> [I]n appropriate circumstances, the court may permit the holder of withheld documents to provide summaries of the documents by category or otherwise limit the extent of his disclosure.  This would certainly be the case if (a) a document-by-document listing would be unduly burdensome and (b) the additional log would be of no material benefit to the discovering party in assessing whether the privilege claim is well-grounded.

*Securities and Exchange Commission v. Thrasher*, 1996 WL 125661 (S.D.N.Y. 1996).  *See also United States v. Gericare Medical Supply Inc.*, 2000 WL 33156442, *4 (S.D. Ala. 2000) (in rejecting defendants' demand for a document-by-document privilege log, concluded that defendants had not explained how a categorical privilege log impaired their ability to test plaintiff's claim of work product protection, which rose or fell as a unit); *In re Imperial Corporation of America Related Litigation*, 174 F.R.D. 475, 478 (S.D. Cal. 1997) (acknowledging that a document-by-document privilege log may not always be appropriate or necessary in every case).

I am persuaded by the district court's analysis in *Thrasher*.  In that case, the SEC demanded that defendant individually identify all documents reflecting contacts between his

counsel and counsel for co-defendants in the same case.  The district court correctly noted that the Commission's demand "seeks wholesale production of documents that are ordinarily covered by the work-product rule."  *Securities and Exchange Commission v. Thrasher*, 1996 WL 125661 (S.D.N.Y. 1996).  The court also accepted the defendant's representation that all of the disputed documents reflect communications between defense counsel and that all such documents had been held in confidence.  In permitting a categorical listing of privileged documents, the *Thrasher* court merely required

> (1) an identification of the time period encompassed by the withheld documents;
> (2) a listing of the individuals who were authors or addressees or were copied on the documents;
> (3) a representation by counsel as to whether all of the documents either (a) where prepared to assist in anticipated or pending litigation or (b) contain information reflecting communications between (i) counsel or counsel's representatives and (ii) the client or the client's representatives, for the purpose of facilitating the rendition of legal services to the client.

*Id.* at *2.

In this case, the SEC has provided Defendant Kozlowski with the same or comparable information.  The Commission contends that the handwritten notes, and internal memoranda and correspondence sought by Defendant's motion contain mental impressions, conclusions, opinions and legal theories of SEC attorneys and those working with them.  Such materials constitute classic "opinion" work product.  *See Hamel v. General Motors Corp.*, 128 F.R.D. 281, 282 (D. Kan. 1989) (noting that Rule 26 admonishes courts to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation").  The work product doctrine is no less applicable to materials prepared in anticipation of litigation by SEC accountants working under the direction or at the

behest of Commission attorneys. *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1219 (4th Cir. 1976) ("opinion work product immunity . . . applies equally to lawyers and non-lawyers alike"). While there is some split of authority, it appears that opinion work product is absolutely protected, or only discoverable under extraordinary or compelling circumstances. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704  n. 12 (10th Cir. 1998) and cases cited therein.

Based upon the foregoing, the court concludes that a document-by-document privilege log is not required as to the documents specifically at issue in Defendant's Motion to Compel. Without a more particularized showing of need by Defendant Kozlowski, I will not require the SEC to list each and every document withheld on the basis of the work product doctrine in response to Request for Production No. 20.[6]

Accordingly, it is Ordered that:

(1)  Defendant Noyes' [motion for] Joinder in Defendant Kozlowski's Motion to Compel (doc. # 263), filed on December 7, 2006, is GRANTED;

(2)  Defendant Kozlozwski's Motion to Compel in Connection with Request No. 20 of his Requests for Production to the Securities and Exchange Commission (doc. # 255), filed on October 13, 2006, is DENIED.

---

[6]This Memorandum Order is specifically limited to the categories of documents at issue in Defendant Kozlowski's Motion to Compel, which addresses handwritten notes, internal memoranda, typed notes and internal SEC correspondence relating to IRUs and equipment sales prepared from 2002 forward. While the court will sustain the SEC's work product claim as to those specific categories, nothing in this Memorandum Order should be construed as relieving the Commission of its obligation to produce responsive documents prepared at a different point in time or not prepared in anticipation of litigation. *See, e.g.,* Kozlowski's Reply in Support of His Motion to Compel, at n. 1.  Such responsive documents should be produced or specifically identified in a supplemental privilege log.

20

DATED this 24th of January, 2007.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge