IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00480-MSK-CBS

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

JOSEPH P. NACCHIO,
ROBERT WOODRUFF,
AFSHIN MOHEBBI,
JAMES KOZLOWSKI, and
FRANK NOYES,

     Defendants.

---

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE
A SECOND AMENDED COMPLAINT**

---

Magistrate Judge Craig B. Shaffer

     This matter comes before the court on Plaintiff Securities and Exchange Commisson's (hereinafter "SEC") Motion for Leave to File a Second Amended Complaint (doc. # 363), filed on May 7, 2008. Responses have been filed by Defendants Nacchio (doc. # 383), Woodruff (doc. # 368), Mohebbi (doc. # 373), Kozlowski (doc. # 366) and Noyes (doc. # 375). The SEC filed a Reply (doc # 388) on May 29, 2008. The court heard arguments on the pending motions during a hearing on May 30, 2008. I have carefully reviewed the pending motion, the related briefing, and the court's file, as well as the applicable Federal Rules of Civil Procedure and case law. I have also considered the arguments of counsel during the May 30 hearing. For the following reasons, the court will grant the SEC's motion.

**BACKGROUND**

The lengthy history of this litigation is well-known to the parties and does not bear repeating in the context of this Order. I will limit my review to the provedural events relevant to the issues raised by the instant motion to amend.

On March 15, 2005, the SEC filed its original Complaint in this case. That Complaint alleged generally that during the period from April 1, 1999 through March 31, 2002, certain "senior executives and others at Qwest Communications International, Inc. engaged in a massive financial fraud that hid from the investing public the true source of the company's revenue and earnings growth, [and] caused the company to fraudulently report approximately $3 billion of revenue." *See* Complaint, at ¶ 1. In part, the Complaint alleged that the Defendants engaged in fraudulent practices involving "indefeasible rights of use" (IRU) transactions. The original Complaint further alleged that "during the fraudulent scheme, the defendants profited by approximately $300,000,000 through salary, bonuses, stock sales, and other compensation." *Id.* at ¶ 10. That Complaint asserted seven claims for relief under 15 U.S.C. § 77q(a)(1); 15 U.S.C. § 77q(a)(2) and (3); 15 U.S.C. § 78j(b) and 17 C.R.R. § 240.10b-5; 15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1; 15 U.S.C. § 87m(a) and 17 C.F.R. §§ 240.12b-20, 240-13a-1, 240.13a-11, and 240.13a-13; and 15 U.S.C. § 78m(b)(2). Defendants filed separate motions to dismiss. *See* doc. ## 51, 62, 67, 69 and 73.

On March 29, 2006, Judge Krieger entered an Order (doc. # 186) denying the motions to dismiss filed by Defendants Kozlowski, Mohebbi, Woodruff and Noyes. Defendant Nacchio's Motion to Dismiss was granted in part and denied in part. More specifically, the District Court dismissed without prejudice the Fourth and Seventh Claims asserted against Defendant Nacchio,

but granted the SEC leave to replead those claims within 14 days. Consistent with Judge Krieger's instructions, the SEC filed its First Amended Complaint (doc. # 194) on April 12, 2006.

Pretrial proceedings in this case have been complicated by contemporaneous criminal proceedings directed against Mr. Nacchio. On July 26, 2005, the United States Attorney's Office moved to intervene in this civil action for the limited purpose of seeking a stay of discovery for a period of 150 days. The United States Attorney's Office explained that "the subject matter of this civil case is directly related to the facts underlying two pending criminal matters and three pending plea agreements." I granted that motion in part and denied it in part with a Memorandum Order (doc. # 117) dated July 28, 2005, which imposed a preliminary stay of discovery in this case pending a status conference on September 28, 2005. At that status conference, I permitted the parties to proceed with discovery of some materials in the possession of the SEC and discovery produced in the Qwest Securities Class Action. I also set a deadline of January 30, 2006 for providing Fed.R.Civ.P. 26(a)(1) disclosures. The parties were precluded from serving any written discovery prior to February 28, 2006. This court more fully set forth the parameters for written discovery in an Order (doc. # 176) dated February 28, 2006. That same Order continued the stay of all depositions in this case.

In the mean time, the government's criminal proceedings moved forward. On December 20, 2005, the grand jury returned an Indictment in *United States v. Nacchio*, 05-cr-00545. The United States Attorney's Office filed a further Status Report (doc. # 246) on September 11, 2006, which requested a stay of deposition discovery in anticipation of a March 2007 trial in *United States v. Nacchio*. Trial in Mr. Nacchio's criminal case began on March 19, 2007 and

concluded on April 19, 2007, with the jury returning a verdict of not guilty on Counts 1-23 and a verdict of  guilty on Counts 24-42.  Defendant Nacchio's sentencing occurred on July 27, 2007. Following an appeal, on March 17, 2008 a panel of the Tenth Circuit reversed Mr. Nacchio's conviction and remanded the case for a new trial.   The United States Attorney's Office has petitioned for a rehearing *en banc*.

On July 20, 2007, this court issued a Fed.R.Civ.P. 16 Scheduling Order (doc. # 303) setting discovery deadlines in this case.  The parties were required to complete all fact discovery by September 15, 2008.  The Scheduling Order directed the parties to designate affirmative experts and provide Fed.R.Civ.P. 26(a)(2) disclosures on or before October 15, 2008, and provide required disclosures for rebuttal experts on or before December 1, 2008.  I set a dispositive motion deadline of January 9, 2009.  Based upon successive discovery conferences with counsel, I am convinced that the parties have been working diligently to complete the necessary discovery in this case.

On November 19, 2007, the United States filed a Statement of Interest and Motion for Entry of Protective Order (doc. # 328), pursuant to 28 U.S.C. § 517, to prevent the disclosure of any information in this case relating to classified contracts, potential contracts and all contacts and communications between the United States Intelligence Community (as defined by the National Security Act of 1947, 50 U.S.C. § 401(a)(4)) and Qwest Communications International Corporation (hereinafter "Qwest"), or its subsidiaries, current or former officers or employees.[1] This Statement was submitted in the wake of Defendants Nacchio, Woodruff, Mohebbi, and

---

[1]This motion was referred to the Magistrate Judge in a Memorandum (doc. # 329) dated November 20, 2007.

Kozlowski's stated intention to seek through discovery information pertaining to classified contracts and potential contracts, as well as related communications and meetings, involving the United States Intelligence Community and Qwest employees. Defendants Kozlowski (doc. # 334), Nacchio (doc. # 337), Noyes (doc. # 340), Mohebbi (doc. # 342) and Woodruff (doc. # 344) filed separate responses which did not dispute the government's assertion of the state secrets privilege. However, the defendants insisted that the resulting exclusion of evidence would substantially impair their ability to mount a defense to the First Amended Complaint, thus requiring dismissal with prejudice. The SEC's Reply (doc. # 346), filed on December 12, 2007, took the position that the government's Motion for Protective Order related only to discovery. The SEC suggested that any dispositive implications arising from such a protective order would need to be addressed in future motions to dismiss.

I held a hearing on the United States' Motion for Protective Order on February 4, 2008. *See* Transcript of Proceedings on February 4, 2008. The procedural implications of this Motion for Protective Order were clear. At that hearing, all parties conceded that the United States had complied with the procedural requirements for invoking the state secrets privilege. In view of those concessions, I observed that consideration of the "state secrets" issue could not be divorced from the broader question of relevance under Fed.R.Civ.P. 26(b)(1).

During the February 4 hearing, SEC counsel stated that the IRU transactions cited in the First Amended Complaint were meant to be examples only, and that the SEC at trial would offer evidence of "IRU transactions in the aggregate." *See* Transcript of Proceedings on February 4, 2008, at 32. Logically, this strategy might impact any Rule 26(b)(1) analysis relating to discovery of IRU transactions. The SEC also acknowledged the possibility that some state secret

5

information would be relevant to "small portions of the SEC's case," but took the position that substantial portions of the First Amended Complaint would survive a motion to dismiss. *Id.* at 52. Prior to February 4th hearing, defense counsel had signaled their intention to file motions to dismiss the First Amended Complaint in its entirety based upon the state secrets privilege. *See, e.g.,* Response on Defendant Kozlowski in Opposition to Government's Statement of Interest and Motion for Entry of Protective Order (doc. # 334). However, my discussions with defense counsel pointed out some allegations in the First Amended Complaint that seemingly would not implicate or require discovery of materials protected by the state secrets privilege. *See, e.g.*, First Amended Complaint, ¶ 105 (alleging that Mohebbi concealed side agreements with Verio, Inc., Cable & Wireless, Flag, and Global Crossing for portability of IRUs) and ¶¶ 110-121 (alleging that Defendants Nacchio and Woodrull "accelerated revenue recognition" relating to Qwest Dex, Inc.'s telephone directories).

It seemed clear to this court that motions to dismiss would be filed, but that the state secret issue would not dispositive of the entire case. It also seems reasonable to assume that the SEC would seek to amend its claims to cure the effects of any adverse decision on motions to dismiss based upon the state secrets privilege. Believing that the parties and the District Court have a common interest in avoiding unnecessary or duplicative motion practice, I suggested that it might be more efficient for the SEC to consider the tactical and procedural implications of the state secret privilege now, rather than after the inevitable motions to dismiss had been filed and decided.

> The question then becomes: At what point does the SEC wrestle with the issue of relevance? Because the disposition of that question could either substantially narrow the scope of the state secret privilege or I suppose, if you're the SEC, would eliminate it completely as a matter of relevance. And I think the SEC

needs to start thinking tactically as well as strategically.

*Id.* at 62. At the conclusion of the February 4 hearing, I granted for a period 60 days the United States' Motion for Protective Order. The court also directed the SEC to file a status report within 30 days indicating whether it intended to file a second amended complaint.

On May 7, 2008, the SEC filed a Motion for Leave to File a Second Amended Complaint (doc. # 363). "In order to eliminate any intrusion into information protected by the state secrets privilege," the SEC claims to have removed "allegations that projections or targets were improper or fraudulent . . . [and] allegations that any transactions lacked a business purpose." In addition, the SEC claims that the proposed Second Amended Complaint has been amended to

(1)     list the specific IRU transactions which support its allegations, none of which was with intelligence community entities;

(2)     eliminate the scienter fraud claims under Section 17(a)(1) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934, while retaining the non-scienter fraud claims under Section 17(a)(2) and (3) of the Securities Act;

(3)     provide more specific examples of its allegations concerning the accounting fraud;

(4)     provide additional detail to the allegations concerning its books and records and internal controls case "to address concerns raised in Judge Krieger's rulings on motions to dismiss;"

(5)     provide additional detail to the allegations concerning its insider trading claims "to address concerns raised in Judge Krieger's rulings;" and

(6)     provided more specific detail and examples in its allegations that Defendant Mohebbi aided and abetted the fraud.

The United States filed a Status Report (doc. # 365) on May 16, 2008 addressing "any state secrets privilege issues remaining" in this action in light of the allegations in the proposed Second Amended Complaint. As set forth in this Status Report, "the United States does not

believe the information that is subject to its assertion of the state secrets and statutory privileges

is relevant to the claims and allegations contained in the Second Amended Complaint." The

Status Report, for example, states that the specific IRU transactions cited in the Second

Amended Complaint "are not IRU sales and swaps by and between Qwest and the U.S.

Intelligence Community." *See* Status Report, at 5.

On May 21, 2008, Defendant Mohebbi filed a Memorandum of Law in Opposition to the

SEC's Motion to Amend the Complaint (doc. # 373). In his Memorandum, Defendant Mohebbi

challenges the proposed Second Amended Complaint on futility grounds, arguing that the SEC's

new aiding and abetting allegations fail to state a claim against him and are time barred.

Defendant Mohebbi also argues that the new allegations will unduly prejudice him to the extent

that additional discovery will necessarily result in further delay and expense. Defendant

Kozlowski's Response (doc. # 366) characterizes the SEC's motion as a "wholesale rewrite of

the Complaint it filed over 3 years ago." More specifically, Kozlowski objects to "the inclusion

of alleged wrongdoing outside the statute of limitations period," to the claim against him

asserted under section 17(a) of the Securities Act, and to the SEC's request for injunctive relief.

If the Second Amended Complaint is permitted, Defendant Kozlowski will seek leave to serve an

additional ten interrogatories on the SEC. While Defendant Noyes' Response (doc. # 375)

"generally agrees with the Commisson's efforts to remove" fraud allegations from the case, he

contends that the SEC has "engaged in a wholesale rewrite of its complaint" and adopts many of

the criticisms set forth in Mr. Kozlowski's Response. Mr. Noyes also asks "leave to pursue a

limited amount of additional discovery" if the Second Amended Complaint is permitted.

Defendants Nacchio (doc. # 383) and Woodruff (doc. # 368) have advised the court that they are

not objecting to the filing of SEC's Second Amended Complaint, however, they have separately

moved to dismiss the Second Amended Complaint on substantive grounds.  *See* Defendant

Woodruff's Motion to Dismiss Certain Claims Due to the Government's Invocation of State

Secrets and Other Privileges (doc. # 369) and Defendant Nacchio's Motion to Dismiss Certain

Claims Based on the Government's Invocation of State Secrets and Other Privileges (doc. #

379).

Despite the parties' diligence in proceeding with discovery, it appears that a number of

fact witnesses remain to be deposed.  On July 11, 2008, Defendants filed an Unopposed Motion

for Extension of Discovery and Dispositive Motion Dates (doc. # 426) and supporting

Memorandum (doc. # 425).  Defendants argue that the requested extensions are necessary in

light of the SEC's pending Motion for Leave to File Amended Complaint, their pending motions

to dismiss addressing the state secrets issue, and a pending motion to compel.  *See* Defendants'

Motion to Compel (doc. #, 396), file on June 24, 2008.  Defendants also note that Mr. Nacchio

has taken the position that his deposition should not be held given the pendency of the

government's petition for rehearing *en banc* and the possibility of a retrial in *United States v.*

*Nacchio.*  Finally, Defendants believe that progress in completing fact discovery will be

complicated by the government's request to delay depositions of Lee Wolfe, Robin Szeliga, Greg

Casey and Mr. Mohebbi, who have been identified as witnesses in any retrial of the criminal

case. *See* Motion by the United Staes for Limited Protective Order Staying Scheduled

Depositions of Witnesses from Criminal Trial (doc. # 411), granted on July 9, 2008.  Defendants

believe all of these circumstances will prevent completion of fact discovery by the current

September 15, 2008 deadline.

## ANALYSIS

The underlying purpose of Fed.R.Civ.P. 15(a) is to facilitate a decision on the merits.

*Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1298 (D. Mont. 1992) (noting that the

court's exercise of discretion must "be guided by the underlying purpose of Rule 15 – to

facilitate decision on the merits, rather than on the pleadings or technicalities"). To that end,

motions to amend should be freely granted when justice requires. *See, e.g., Bellairs v. Coors*

*Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995). In considering the "needs of justice,"

the court must take into consideration the interests of all parties. A motion to amend must be left

to the sound discretion of the district court, and must be decided based upon a careful evaluation

of multiple factors. *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th

Cir. 1984).

> Rule 15 (a) has been interpreted . . . to require that amendments be freely allowed
> in the absence of a narrowly defined set of exceptional circumstances. The rules
> governing amendment and supplemental pleadings are generally liberally
> construed in favor of permitting amendment, consistent with the goal of ensuring
> that all related claims are litigated in a single action. Leave to amend should be
> freely given based on the balancing of several factors, including futility, delay,
> bad faith, dilatory motive, repeated failure to cure deficiencies, and prejudice to
> the opposing party.

*Arkansas-Platte & Gulf Partnership v. Dow Chemical*, 886 F. Supp. 762, 765 (D. Colo. 1995).

*See also Gambelli v. United States*, 904 F. Supp. 494, 497 (E.D. Va. 1995)*; Taliaferro v. City of*

*Kansas City, Kansas,* 128 F.R.D. 675, 687 (D. Kan. 1989). The non-moving party bears the

burden of showing that the proposed amendment is sought in bad faith, that it is futile, or that it

would cause substantial prejudice, undue delay or injustice. *Smith v. Chrysler Corp.*, 938 F.

Supp. 1406, 1412 (S.D. Ind. 1996).

A.    *Undue Delay*

Based upon the present record, I will not deny the SEC's motion to amend as untimely.

The court recognizes that "[u]ntimeliness in itself can be a sufficient reason to deny leave to

amend, particularly when the movant provides no adequate explanation for the delay." *Panis v.*

*Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10ᵗʰ Cir. 1995).  *See also Deghand v. Wal-Mart*

*Stores, Inc.,* 904 F. Supp. 1218 (D. Kan. 1995) (holding that courts may deny leave to amend for

untimeliness or undue delay without a showing of prejudice to the opposing party).  *But compare*

*Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 384-85 (2d Cir. 1968)

(holding that a three-year delay in moving to amend the initial complaint is an inadequate basis

for denying a motion to amend, particularly in the absence of bad faith on the part of the

plaintiff).

The timeliness of the SEC's motion must be considered in the context of the particular

circumstances of this case.  While considerable time has passed since the lawsuit was filed in

2005, pretrial management and the discovery process have been complicated by the criminal

proceedings against Mr. Nacchio.  *Cf. Zhu v. Federal Housing Finance Board*, 2006 WL 626044

* 3 (D. Kan. 2006) (found that plaintiff's motion to amend, filed three years after the original

complaint, was not untimely where the delay was primarily caused by court proceedings in

another jurisdiction); *Perry v. American Airlines, Inc.*, 405 F. Supp.2d 700, 705 (E.D. Va. 2005)

(held that motion to amend could not be considered untimely even thought it was filed 24

months after the action was commenced; found that much of the delay was attributable to factors

other than plaintiff's lack of diligence).  I also note that the United States waited until November

19, 2007 to file its Motion for Entry of Protective Order formally asserting the state secrets

privilege in this case. There is no indication that the SEC had any control over the timing of that motion.

Rule 15, like all the Federal Rules of Civil Procedure, should be administered to secure the speedy, and inexpensive determination of every action and proceeding. *See* Fed.R.Civ.P. 1. However, those laudable goals must be harmonized with the equally important goal of facilitating a just decision on the merits. *Cf. Gropp v. United Airlines, Inc*., 847 F. Supp. 941, 946 (M.D. Fla. 1994) (in granting a motion to amend filed one year after the lawsuit was commenced, declined to construe Rule 1 as a "mandate which sacrifices the just resolution of actions in order to comport with a notion of efficiency").

### B.      Bad Faith

The court does not find that this request to amend is the product of bad faith or dilatory motives. Certainly, by July 18, 2007, both the SEC and the United States were on notice that Defendant Kozlowski intended to explore through discovery Mr. Nacchio's contacts with government agencies. Those same governmental contacts had been the subject of evidentiary rulings in *United States v. Nacchio*. Yet, the United States' motion for a protective order formally invoking the state secrets privilege was filed approximately four months after this court entered a Rule 16 scheduling order and after fact depositions had commenced. The SEC filed the pending motion to amend largely in response to my expressed desire to find a way to move the case forward more efficiently. Under the circumstances, I do not find that the SEC's actions were motivated by bad faith or an attempt to extract some unfair advantage.

### C.      Prejudice

Multi-party litigation, by its very nature, imposes burdens on litigants, their counsel and

the court. However, the burdens of litigation do not necessary equate to prejudice for purposes of Rule 15(a). *Haddock v. Nationwide Financial Services, Inc.*, 514 F. Supp.2d 267, 272 (D. Conn. 2007). Prejudice, in the context of Rule 15(a), "means undue difficulty in prosecuting [or defending] a lawsuit as a result of a change of tactics or theories on the part of the other party." *Taliaferro v. City of Kansas City, Kansas,* 128 F.R.D. 675, 678 (D. Kan. 1989) (noting that the party opposing the amendment has the burden of showing prejudice)*. See also Sprint Communications Co. L.P. v. Vonage Holdings*, 500 F. Supp.2d 1290. 1348-49 (D. Kan. 2007) (prejudice to the non-moving party "most often occurs when the amendment claims arise out of different subject matter than previously set forth in the complaint and raise significant new factual issues"); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 216 F.R.D. 301, 306 (D.N.J. 2003) (held that the non-moving party must do more than merely claim prejudice; rather, it must show that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely).

Defendants Kozlowski and Noyes have requested leave to conduct additional limited discovery if the court allows the Second Amended Complaint. However, "the need for additional discovery is not persuasive as undue prejudice." *Gropp v. United Airlines, Inc.*, 847 F. Supp. at 946. *See also United States for and Behalf of Maritime Administration v. Continental Illinois National Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("the adverse party's burden of undertaking discovery, standing along, does not suffice to warrant denial of a motion to amend a pleading").

Defendant Mohebbi offers more particularized claims of prejudice. Mr. Mohebbi argues that, quite naturally, his discovery to-date has been directed to the claims set forth in the First

Amended Complaint.  According to Defendant Mohebbi, the SEC had decided by August 2007

"to expand its allegations against Mohebbi, but chose not to do so until now, because it

determined that one comprehensive amendment would be preferable."  *See* Mohebbi's

Memorandum of Law, at 11.  *But see Christopher v. Mobil Oil Corp.*, 149 F.R.D. 539, 544 (E.D.

Tex. 1993) (allowing amendment despite the fact that new claims could have been asserted from

the outset of the litigation); *Donovan v. Gillmor*, 535 F. Supp. 154, 158 (N.D.  Ohio 1982) ("The

rule allowing for the liberal amendment of pleadings must overcome the defendants' claims of

prejudice, where defendants have failed to demonstrate their prejudice and have made no

showing of plaintiff's misconduct or fault other than broadly asserting that the information

obtained by plaintiff should have been discovered earlier.").

     Mr. Mohebbi insists that the new aiding and abetting allegations against him will require

further discovery through additional interrogatories and the deposition or re-deposition of several

witnesses.  Even accepting Mr. Mohebbi's assertions as true for purposes of the pending motion,

I do not find that the proposed Second Amended Complaint would cause undue prejudice.  The

proposed aiding and abetting allegations against Defendant Mohebbi would not materially alter

the scope of the litigation or the factual context of the SEC's claims.  *Cf. Miller v. Selsky*, 234

F.3d 1262   (2d Cir. 2000) (plaintiff allowed to amend his complaint to add new facts because

the new facts were "merely variations on the original theme"); *CenterForce Technologies, Inc. v.*

*Austin Logistics, Inc.*, 2000 WL 652943, *6 (D. Del. 2000) (found that any prejudice from

plaintiffs' proposed amendment was diminished because the new claims related to the same

product, the patents at issue were substantially similar and significant discovery regarding the

new patent had been conducted already); *Bleiler v. Cristwood Contracting Co., Inc.,* 868 F.

14

Supp. 461, 463 (D. Conn. 1994) ("Permitting a proposed amendment also may be prejudicial if

discovery already has been completed, but this concern may be alleviated if the new claim arises

from a similar set of operative facts and a similar time as the existing claims."). *Compare*

*American Society for the Prevention of Cruelty to Animals v. Ringling Brothers and Barnum &*

*Bailey Circus*, 244 F.R.D. 49, 51 (D.D.C. 2007) (the court may "deny leave to amend where the

non-moving party would be put to the additional expense and burden of a more lengthy and

complicated trial or where the issues raised by the amendment are remote to the issues in the

case").

  I do not discount the possibility that some additional discovery may be required if the

SEC is allowed to proceed with the allegations in the Second Amended Complaint.  That

additional discovery may potentially require some extensions of discovery deadlines.  However,

the parties already face the possibility of delay as a result of proceedings in *United States v.*

*Nacchio*.  Moreover, at this time, the parties do not have a trial date in either this case or *United*

*States v. Nacchio*.  *CenterForce Technologies, Inc. v. Austin Logistics, Inc.*, 2000 WL 652943,

*6 (D. Del. 2000) (found that need for additional discovery did not subject defendant to "undue

prejudice" where a trial date had not been set, and defendants would be able to conduct

discovery with respect to the additional claims and defenses).

  D.  *Futility*

  While Fed. R. Civ. P. 15(a) requires that leave to amend be freely given, that requirement

does not apply where an amendment obviously would be futile.  *T.V. Communications Network,*

*Inc. v. Turner Network Television, Inc.*,  964 F.2d 1022, 1028 (10th Cir. 1992).  *See also Simon*

*v. Navon*, 951 F. Supp. 279, 283-84 (D. Me. 1997) (motion to amend may be denied where

15

proposed amendment advances claim that is legally insufficient on its face).  Where a party

opposes a motion to amend on grounds of futility, the court must apply the same standard that

governs a motion to dismiss.  *Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc.*, 944

F. Supp. 1411, 1441 (D. Min. 1996).  *See also Jefferson County School District No. R-1 v.*

*Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (proposed amendment is

futile if the complaint, as amended, would be subject to dismissal).

Here, Defendants Nacchio and Woodruff have already filed motions to dismiss.  Those

motions are before Judge Krieger for decision.  If the other defendants have viable arguments for

dismissing the Second Amended Complaint, those arguments are more efficiently raised in the

context of a Rule 12(b)(6) motion, rather than indirectly under Rule 15(a).  *Cf. Pearl Brewing*

*Co. v. Joseph Schlitz Brewing Co.*, 415 F. Supp. 1122, 1125 (S.D. Tex. 1976) (factual disputes

typically cannot be decided on the pleadings and are improperly inquired into in the context of a

motion to amend, particularly in view of the liberal rules regarding amendment of complaints)

(cited with approval in *La Compania Ocho, Inc. v. United States Forest Service*, 874 F. Supp.

1242, 1244-45 (D. N.M. 1995).  *See also Zarycki v. Mount Sinai*, 2005 WL 2977568, *11

(S.D.N.Y. 2005) (suggesting that a defense argument that is really addressed to the admissibility

of evidence at trial is not a basis to deny plaintiff's motion to amend).  At the very least, such an

approach would avoid the additional time and expense associated with inevitable objections

under either Fed.R.Civ.P. 72(a) or (b).[2]  *Cf. In re K-Dur Antitrust Litigation*, 338 F. Supp.2d 517,

---

[2]While the SEC's Motion for Leave to File a Second Amended Complaint does not
purport to seek dispositive relief, the formal label of a motion is not determinative for purposes
of  § 636(b)(1)(A) and (B).  The Tenth Circuit has held that "[m]otions not designated on their
face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when
they have an identical effect."  *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th

528 (D.N.J. 2004) (acknowledging the efficiencies of disposing of a motion to amend along with

a Rule 12 motion to dismiss); *Leach v. Northern Telecom, Inc.*, 790 F. Supp. 572, 573-74 (E.D.

N.C. 1992) (reasoned that a pragmatic approach to plaintiff's motion to amend assured the best

use of judicial time and resources).

Accordingly, for the reasons stated above, this court will GRANT Plaintiff's Motion for

Leave to File a Second Amended Complaint (doc. # 363), without prejudice to the Defendants'

right to file appropriate motions to dismiss under Rule 12(b). The Second Amended Complaint

is deemed filed as of this date.

DATED this 14th day of July, 2008.

BY THE COURT:


*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge

---

Cir. 2000), citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988).
An order denying a motion to amend may be dispositive if the order effectively removes a claim
from the action. *See McFadden v. Pioneer Natural Resources USA, Inc*., 2006 WL 3059967 (D.
Colo. 2006) (Miller, J.), citing *Pedro v. Armour Swift-Eckrich*, 118 F. Supp.2d 1155, 1157 (D.
Kan. 2000).