IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00480-MSK-CBS

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

JOSEPH P. NACCHIO,
ROBERT WOODRUFF,
AFSHIN MOHEBBI,
JAMES KOZLOWSKI, and
FRANK NOYES,

     Defendants.

---

**ORDER REGARDING DEFENDANTS' MOTION TO COMPEL
THE RULE 30(b)(6) WITNESSES OF THE SEC DIVISION OF
CORPORATION FINANCE AND OFFICE OF CHIEF ACCOUNTANT
TO ANSWER QUESTIONS THEY WERE DIRECTED BY SEC COUNSEL
NOT TO ANSWER ON GROUNDS OF DELIBERATIVE PROCESS
PRIVILEGE AND TO COMPEL THE SEC TO PRODUCE RELATED
DOCUMENTS PREVIOUSLY WITHHELD ON THE BASIS OF
DELIBERATIVE PROCESS PRIVILEGE**

---

Magistrate Judge Craig B. Shaffer

     THIS MATTER comes before the court on Defendants' Motion (doc. # 396) and related

Memorandum in Support (doc. # 397) to compel Fed.R.Civ. P. 30(b)(6) witnesses designated by

the SEC's Division of Corporation Finance and Office of Chief Accountant to answer questions

they were directed not to answer based on the deliberative process privilege during depositions

conducted on June 16-18, 2008, and to compel production of related documents previously

withheld on the basis of the same privilege. Plaintiff Securities and Exchange Commission

(SEC) has filed an Opposition brief (doc. # 408) and a Supplemental Submission (doc. # 504).

The SEC has also provided for the court's *in camera* review proposed responses to the deposition questions that elicited the Commission's privilege assertion. *See Cobell v. Norton*, 213 F.R.D. 1, 9-10 (D.D.C. 2003) (directing the government to provide "an affidavit that meets the requirements for formal invocation of the deliberative process privilege" and "a detailed summary of the responses that the witness would have provided if [the government] had not asserted the deliberative process privilege"). Defendants filed a Reply in Support of Motion to Compel (doc. # 431), and Defendant Kozlowski filed a Response to Supplemental Submission of the SEC (doc. # 506). Briefing on the pending motion closed on December 5, 2008 and the court held a hearing on this and several other motions on December 9, 2008.

The District Court's Order of Reference, dated April 11, 2005, referred this action to the Magistrate Judge with instructions to, *inter alia*, "hear and determine motions relating to discovery" and "hear and determine such other non-dispositive motions as may be specifically referred." The court has reviewed the parties' briefs and exhibits, and has conducted its own legal research. After carefully considering the parties' arguments against the backdrop of applicable case law and the particular facts of this case, the court concludes that Defendants' motion should be denied.

## BACKGROUND

The complete history of this litigation does not bear repeating in the context of this Order. Suffice to say, the SEC filed its original Complaint on March 15, 2005. That Complaint alleged generally that during the period from April 1, 1999 through March 31, 2002, certain "senior executives and others at Qwest Communications International, Inc. engaged in a massive financial fraud that hid from the investing public the true source of the company's revenue and

earnings growth, [and] caused the company to fraudulently report approximately $3 billion of revenue." *See* Complaint, at ¶ 1. The Complaint alleged, in pertinent part, that the Defendants engaged in fraudulent practices involving "indefeasible rights of use" (IRU) transactions.[1] The original Complaint further alleged that "during the fraudulent scheme, the defendants profited by approximately $300,000,000 through salary, bonuses, stock sales, and other compensation." *Id.* at ¶ 10. That Complaint asserted seven claims for relief under 15 U.S.C. § 77q(a)(1); 15 U.S.C. § 77q(a)(2) and (3); 15 U.S.C. § 78j(b) and 17 C.R.R. § 240.10b-5; 15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1; 15 U.S.C. § 87m(a) and 17 C.F.R. §§ 240.12b-20, 240-13a-1, 240.13a-11, and 240.13a-13; and 15 U.S.C. § 78m(b)(2).

On March 29, 2006, Judge Krieger entered an Order (doc. # 186) denying motions to dismiss filed by Defendants Kozlowski, Mohebbi, Woodruff and Noyes. Defendant Nacchio's Motion to Dismiss was granted in part and denied in part. More specifically, the District Court dismissed without prejudice the Fourth and Seventh Claims asserted against Defendant Nacchio, but granted the SEC leave to re-plead those claims within 14 days. Consistent with Judge Krieger's instructions, the SEC filed its First Amended Complaint (doc. # 194) on April 12, 2006.

On July 20, 2007, this court issued a Fed.R.Civ.P. 16 Scheduling Order (doc. # 303) setting discovery deadlines in this case. While the parties have worked diligently throughout the

---

[1]"An IRU is an exclusive, long-term lease, granted by an entity holding legal title to a telecommunications cable or network, of a specified portion of a telecommunications cable, such as specified fiber optic strands within an optical fiber cable, or the telecommunications capacity of a cable or network, such as specific channels of a given bandwidth." *Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1215 n.2 (10th Cir. 2005). *See also Virgin Islands Telephone Corp. v. F.C.C.*, 198 F.3d 921, 923 n.2 (D.C. Cir. 1999).

pretrial process, the court has held innumerable conferences or hearings with counsel in an effort to overcome procedural hurtles and discovery disputes. For example, on October 13, 2006, Defendant Kozlowski moved to compel the production of "memoranda, position statements or papers, presentations, staff comments and other documents prepared by the SEC relating to accounting for IRU and/or equipment sales transactions," challenging the SEC's assertion of the work product doctrine. *See* Exhibit A-1, at p. 3, attached to Defendant Kozlowski's Motion to Compel (doc. # 255). In a Memorandum Order (doc. # 279), dated January 25, 2007, I denied Defendant Kozlowski's motion to compel after upholding the SEC's assertion of the work product doctrine.[2]

On July 14, 2008, this court granted the SEC's Motion for Leave to File a Second Amended Complaint. The Second Amended Complaint alleges that from 1999 to 2002, the Defendants participated in a number of fraudulent acts designed to conceal Qwest's true financial condition, and asserts a variety of securities fraud claims against all Defendants. Notably, for purposes of the pending motion, the bulk of the allegations relate to Qwest's "one-time" sales of "IRUs" that were reported by the company as "recurring" revenue, thereby inflating the apparent economic health of Qwest. The Second Amended Complaint also alleges that Defendants Noyes and Kozlowski, as Qwest accountants, "failed to ensure that revenue from

---

[2]The SEC provided Defendants with a privilege log on June 30, 2006 which asserted the work product doctrine and deliberative process privilege with respect to documents subsumed within Request for Production No. 20: "memoranda, position statements or papers, presentations, staff comments, and other documents prepared by the SEC relating to accounting for IRU and/or equipment sales transactions." The SEC supplemented that privilege log on September 15, 2006. My January 25, 207 Memorandum Order also held that without a more particularized showing of need, the SEC was not required to provide a privilege log that individually listed every document withheld on the basis of the work product doctrine in response to Request for Production No. 20.

[these] transactions was properly recorded in Qwest's financial statements, causing the company to improperly report revenue." *See Securities and Exchange Commission v. Nacchio*, 2008 WL 4170269, *1 (D. Colo. 2008).

On June 16 and 17, 2008, the Defendants took Rule 30(b)(6) depositions of Todd Edward Hariman and Leslie Overton, who had been designated as representatives of the SEC's Division of Corporation Finance. James Lee Kroeker was deposed by Defendants on June 18, 2008 as the Rule 30(b)(6) designee for the Office of Chief Accountant. At each deposition, the deponent was instructed not to answer questions after the SEC's counsel invoked the deliberative process privilege. With the instant motion, Defendants seek to compel that testimony, along with the production of all documents relating to the topics set forth in their Rule 30(b)(6) depositions notices previously withheld on the basis of the deliberative process privilege.[3]

## ANALYSIS

While the deliberative process privilege arises most frequently in the context of litigation under the Freedom of Information Act, 5 U.S.C. § 552(b)(5), the privilege has wider applicability. *See Cobell v. Norton*, 213 F.R.D. at 9. The parameters of the deliberative process privilege are well-established, but often difficult to apply in a specific factual context. *Cf. Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (recognizing that the deliberative process privilege is dependent upon the individual document and the role it plays in the administrative process). *See also EPA v. Mink*, 410 U.S. 73, 86

---

[3]Defendants' supporting Memorandum does not separately address the production of documents and, therefore, the court will presume the request for documents hinges on Defendants' broader challenge to the assertion of privilege during the subject depositions.

(1973) (suggesting that decisions relating to the deliberative process privilege discovery may reflect a balancing of the relative needs of the parties and the particular circumstances of the litigation involved).  Underpinning the privilege is "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government."  *Casad v. Department of Health and Human Services*, 301 F.3d 1247, 1251 (10th Cir. 2002).  *Cf. Gavin v. Securities and Exchange Commission*, 2007 WL 2454156, *10 (D. Minn. 2007) ("[t]he purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of actions and to engage in internal debates without fear of public scrutiny").  To fall within the deliberative process privilege, documents or testimony must be deliberative and pre-decisional in nature.  *Trentadue v. Integrity Committee*, 501 F.3d 1215, 1227 (10th Cir.), *reh'g and reh'g en banc denied,* 2007 WL 480078 (10th Cir. 2007).

"Pre-decisional" documents reflect the "give-and-take of the consultative process . . . such as drafts, recommendations, proposals, and suggestions that reflect the personal opinions of the author rather than the policy of the agency."  *Bloomberg, L.P. v. Securities and Exchange Commission*, 357 F. Supp.2d 156, 168 (D.D.C. 2004).  *Cf. Krikorian v. Department of State*, 1990 WL 236108, *5 (D.D.C. 1990) (holding that the deliberative process privilege applied to documents that "represent the building blocks of policymaking, proposed recommendations by agency employees for how the agency might respond to inquiries on a sensitive . . . policy issue, and were part of the careful consideration of proposals central to the deliberative process"), *aff'd in part and remanded for further proceedings*, 984 F.2d 461, 466 (D.C. Cir. 1993); *Burke Energy*

*Corporation v. Department of Energy*, 583 F. Supp. 507, 513 (D. Kan. 1984) (holding that draft

documents representing "the tentative position of agency personnel and . . . subject to revision"

were pre-decisional for purposes of FOIA).

To be considered "deliberative," a document should reflect policy or decision-making

processes, rather than purely factual or investigative matters. *Trentadue v. Integrity Committee*,

501 F.3d at 1227. "A record is 'deliberative' when 'it reflects the give-and-take of the

consultative process." *NAACP Legal Defense and Educational Fund, Inc. v. Department of

Housing and Urban Development*, 2007 WL 4233008, *9 (S.D.N.Y. 2007). *Cf. Access Reports

v. Department of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ("the 'key question' in

identifying 'deliberative' material is whether disclosure of the information would 'discourage

candid discussion within the agency'"). "Factual material that does not reveal the deliberative

process is not protected." *Feshbach v. Securities and Exchange Commission*, 5 F. Supp.2d 774,

784 (N.D. Cal. 1997) (internal quotation marks and citation omitted).

It also bears noting that Rule 26(b) permits discovery "regarding any matter, *not

privileged*, that is relevant to the claim or defense of any party" or discovery of any information

that "appears reasonably calculated to lead to the discovery of admissible evidence." *See

Fed.R.Civ.P. 26(b)(1) (emphasis added). Privileges further the administration of justice and

"should not be set aside lightly." *See Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo.

2002); *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991).

However, privileges also have the potential for withholding relevant information from the finder

of fact, and for that reason the party asserting the privilege has the burden of proving each

element of the privilege. *See, e.g., Chevron USA v. United States*, 80 Fed. Cl. 340, 356 (Fed.

Cl.), *on reconsideration in part on other grounds*, 83 Fed. Cl. 195 (Fed. Cl. 2008). As with all privileges, the deliberative process privilege must be narrowly construed. *See, e.g., Redland Soccer Club, Inc. v. Department of Army*, 55 F.3d 827, 856 (3rd Cir. 1995).

In their motion to compel, Defendants challenge the SEC's assertion of the deliberative process privilege on several grounds. First, Defendants contend that the SEC has impliedly waived the privilege by asserting allegations in the Second Amended Complaint that implicate the Commission's own position (and possible uncertainty within the agency) on how existing accounting guidance should be applied to IRU transactions. Moreover, Defendants dispute the applicability of the deliberative process privilege under the facts of this case. Defendants cite to deposition testimony in which SEC witnesses conceded that the agency "relied on *private sector* standard setting bodies (*e.g.,* the Financial Accounting Standards Board ('FASB') to establish [generally accepted accounting principles] ('GAAP') relating to IRU and swap transctions."[4] *See* Defendants' Memorandum in Support, at 2. Based upon this perceived concession, Defendants argue that "[d]iscussions within the SEC about existing GAAP and guidance issued by private sector standard setting bodies does not rise to the level of deliberative process." *Id.* at 7. Under this theory, the communications in question could not be pre-decisional because they concerned guidance that already had been promulgated by those private sector entities. Finally, Defendants contend that the deliberative process privilege cannot protect from disclosure

---

[4]"The Financial Accounting Standards Board (FASB) and the American Institute of Certified Public Accountants (AICPA) have established GAAP by issuing accounting pronouncements, including Statements of Financial Accounting Standards (FAS) and Statements of Position (SOP). An FASB task force, the Emerging Issues Task Force (EITF), also issues positions that are considered part of GAAP." *SEC v. Spiegel, Inc.*, 2003 WL 22176223, *53 n.40 (N.D. Ill. 2003).

communications between SEC employees concerning a public speech regarding IRU accounting given by Eric Casey, who was then a Professional Accounting Fellow in the SEC's Office of Chief Accountant, or communications relating to remarks before Congress on March 21, 2002 made by John Morrissey, Deputy Chief Accountant of the SEC.

A.      *Waiver of the Deliberative Process Privilege*

Defendants argue, almost in passing, that the SEC waived the deliberative process privilege by filing the instant action, thereby making the withheld materials and testimony relevant to the case. The only case cited by Defendants in support of this waiver claim, *Federal Deposit Insurance Corp. v. Wise*, 139 F.R.D. 168 (D. Colo. 1991) is readily distinguishable. There, the plaintiff alleged that federal regulators had disapproved of the financial institution's lending policies and management prior to the transactions at issue, and that regulators had been misled by those transactions. The court found that the plaintiff had "injected into this controversy the actions, knowledge and beliefs of the regulators, forcing these issues to the very forefront of the litigation." *Id.* at 172. I do not find those same allegations in the instant case.

My own review of the applicable case law reveals a lack of unanimity among courts that have addressed the waiver issue. Some courts have found a waiver of privilege based upon the governmental agency's status as a plaintiff in the civil action. *See, e.g., Brock v. Weiser*, 1987 WL 12686, *2 (N.D. Ill. 1987) (holding that the Secretary of Labor had waived the deliberative process privilege by asserting claims against the defendants under the Employee Retirement Income Security Act of 1974. *See also United States v. Gates*, 35 F.R.D. 524, 529 (D. Colo. 1964) (finding that the government "waives any executive privilege which might arguably exist otherwise . . . when it, as plaintiff, maintains an action in which the documents in question would

be discoverable in the absence of the purported executive privilege").

Other courts have rejected a claim of deliberative process privilege on the grounds that "when the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over." *EEOC v. Citizens Bank & Trust Co.*, 117 F.R.D. 366, 366 (D. Md. 1987). In the *Citizens Bank* case, the court reasoned that the EEOC devoted much of its activities to litigating as a plaintiff and the materials in dispute were "case-specific." Similarly, in *Federal Deposit Insurance Corporation v. Hatziyannis*, 180 F.R.D. 292, 294 (D. Md. 1998), the court rejected the government's assertion of the deliberative process privilege because the FDIC, as Receiver, was proceeding as the plaintiff and the documents at issue were case-specific. The court in *Hatziyannis* particularly noted that "the defendants have raised allegations of bad faith and unfair dealing, for which the government's own records of decision are likely to contain the best evidence." In essence, the court applied the conventional balancing test to determine that under the particular facts of that case, the needs of the litigation outweighed the benefit of preserving the integrity of the government's internal deliberations.

Finally, courts have declined to find a waiver of the deliberative process privilege simply because a federal agency has initiated the subject litigation. *See, e.g., Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985) (the government does not automatically waive the privilege that "protects agency officials' deliberations, advisory opinions and recommendations" simply by bringing suit); *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 110 (S.D.N.Y. 2005) (rejecting defendant's argument that the deliberative process privilege is not available to the government when the government is

the plaintiff); *In re Consolidated Litigation Concerning International Harvester's Disposition of Wisconsin Steel*, 1987 WL 20408, *7 (N.D. Ill. 1987) (describing as the "better view" that an agency does not automatically waive the deliberative process privilege by filing suit). *Compare Federal Trade Commission v. Digital Interactive Associates, Inc.*, 1997 WL 524905, *3 (D. Colo. 1997) (holding that the Federal Trade Commission had not waived the deliberative process privilege belonging to the Federal Communications Commission by making an FCC document an issue in the case).

I am not persuaded by Defendants' argument or those cases finding an automatic waiver of the deliberative process privilege. The deliberative process privilege seeks to (1) encourage open, frank discussions on matters of policy between agency subordinates and superiors; (2) protect against premature disclosure of proposed policies; and (3) protect against public confusion from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency's actions. *Appleton v. Food and Drug Administration*, 451 F. Supp.2d 129, 142 (D.D.C. 2006). These considerations are no less important or valid for federal agencies with enforcement authority that frequently litigate as plaintiffs. Accordingly, I do not find that the SEC waived the deliberative process privilege simply by filing the instant action.

B.      *Communications Within The SEC Regarding IRU Accounting and Transactions*

Defendants specifically challenge the SEC's assertion of the deliberative process privilege in response to several deposition questions that sought to explore communications between the Division of Corporation Finance and Office of Chief Accountant relating to the accounting treatment of IRUs and IRU transactions, as well as communications between employees of the Division of Corporation Finance and other SEC employees or any SEC

Commissioner relating to the same subject. Defendants take the position that to qualify for the deliberative process privilege, the withheld testimony or document must be "antecedent to the adoption of agency policy" and "must actually be related to the process by which policies are formulated." *See* Defendants' Reply in Support of Motion to Compel, at 3. Extending this argument, Defendants conclude that the privilege is not applicable in this case because "the SEC did not formulate *policies* related to the application of GAAP to IRU accounting." *Id*. (emphasis in original).

Defendants' interpretation of the deliberative process privilege seems to focus exclusively on the adoption of agency *policies*. *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (in addressing the deliberative process privilege, parties should not exalt semantics over substance). To the contrary, the privilege is intended to protect the deliberative process and, thereby, the quality of agency decisions. *Sierra Club v. Department of Interior*, 384 F. Supp.2d 1, 15 (D.D.C. 2004). *See also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (the deliberative process privilege shelters "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated"); *Casad v. Department of Health and Human Services*, 301 F.3d at 1251 (noting that the deliberative process privilege is intended to "enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government"); *California Native Plant Society v. EPA*, 251 F.R.D. 408, 412 (N.D. Cal. 2008) ("[t]he privilege protects the decision making process at large, and a document need not lead to a specific decision, let alone a final decision, in order to be protected"). To properly claim the privilege, an agency is not required to demonstrate a specific final decision, but simply establish

what deliberative process was involved and the role played by the contested evidence in the course of that process. *Lurie v. Department of the Army*, 970 F. Supp. 19, 33 (D.D.C. 1997). *See also Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp.2d 19, 35 (D.D.C. 2000), citing *Formaldehyde Inst. v. Department of Health & Human Services*, 889 F.2d 1118, 1123 (D.C. Cir. 1989).

In defense of its privilege assertion, the SEC provided the court with a Declaration by Jeffrey Minton, Chief Counsel in the Office of Chief Accountant. *See Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1204 (D.C. Cir. 1991) (in order to sustain its burden, an agency asserting the deliberative process privilege must describe the agency's decision-making process to establish that the challenged documents or communications are pre-decisional and deliberative). *See also Boyd v. Department of Justice*, 475 F.3d 381, 192 (D.C. Cir. 2007) (the court did not abuse its discretion by failing to conduct an *in camera* review when the agency provided a sufficiently detailed affidavit and the opposing party presented no evidence of bad faith), *cert. denied*, 128 S.Ct. 511 (2007), *reh'g denied*, 128 S.Ct.975 (2008). Mr. Minton's Declaration states that:

> OCA's staff frequently works closely with personnel from the Division [of Corporation Finance] concerning various issues relating to accounting and financial reporting. OCA does not review filings submitted by public companies. It is the responsibility of the Division to review such filings and to handle related inquiries. However, when staff members from the Division are reviewing a filing by a registrant which raises an issue relating to accounting or financial reporting, or when they receive an inquiry directly from a registrant regarding such an issue, they frequently contact personnel from OCA to discuss the accounting issues raised. . . . These issues are frequently very factually specific: that is, they arise within unique factual circumstances raised by a particular filing or registrant's inquiry. The focus of such discussions typically does not involve whether the Commission or staff should approve a particular accounting practice generally. Rather, such discussions between OCA and Division staff are more narrowly focused on whether the staff should reach a decision on whether or not to

13

challenge a proposed course of action by a registrant.

> OCA is the principal advisor to the Commission on, and is responsible to the Commission for, accounting and auditing matters arising in the administration of the federal securities laws. In that role, OCA and its staff frequently consult and interact with the Commissioners and their staff, and other Commission offices and divisions and their staff, in deliberating and formulating positions on the application and policy of the federal securities laws in matters of accounting and financial reporting. For example, OCA and its staff consult and advise the Commissioners on accounting and financial reporting issues during their evaluation of policy statements, interpretive statements, rulemaking and enforcement recommendations. . . .

*See* Exhibit 5, at 2-3, appended to Plaintiff's Opposition to Defendant's Motion to Compel. The SEC also has provided for my *in camera* review proposed testimony that the Rule 30(b)(6) deponents would have provided in response to the deposition questions to which the deliberative process privilege was asserted.

Based upon my review of the foregoing materials, I find that the deliberative process privilege was properly asserted in response to the specific deposition questions that addressed internal agency communications regarding IRU accounting and transactions. For purposes of this Order, it suffices to say that the Rule 30(b)(6) deponents would have described internal agency discussions and memoranda that addressed topics or issues surrounding accounting principles relating to IRU transactions. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 151 n. 18 (recognizing that an agency should be "engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process"). The Rule 30(b)(6) deponents also would describe communications that reflected internal discussions among agency personnel in advance of a final decision on the disposition of accounting issues pertaining to a specific registrant. Other communications concerned the

internal review of draft memoranda focusing on the application of accounting principles to a particular registrant's specific facts and circumstances. *See Coastal States Gas Corporation v. Department of Energy*, 617 F.2d at 866 (the deliberative process privilege contemplates the "give-and-take of the consultative process" and covers "recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the personal opinions of the writer rather than the policy of the agency"). The deponents' proffered testimony describes a process in which the Commission's position on those matters was still evolving and reflects the subjective give-and-take that lies at the heart of the deliberative process privilege. I find that the SEC has properly asserted the privilege as to the foregoing testimony.

    C.    *Communications Regarding Casey's 1999 Speech*

Defendants also challenge the SEC's assertion of the deliberative process privilege relating to communications between Mr. Hardiman and Eric Casey, and communications with the Office of Chief Accountant relating to a speech given by Mr. Casey on November 16, 1999. Casey made his presentation to the Global Capacity Providers CFO Roundtable, which had been convened "to share ideas and insights about the telecommunications industry and accounting issues it faces." *See* Exhibit 4, attached to Defendants' Memorandum in Support. Mr. Casey apparently had "been an observer to a number of teleconferences between the FASB staff and the Secret Leasing Society regarding a number of revenue recognition issues involving capacity providers." *Id.* During their depositions, Messers. Hardiman and Kroeker were precluded from answering questions that attempted to explore internal feedback that Mr. Casey might have received in advance of his November 16, 1999 presentation.

Defendants argue that these questions do not implicate the deliberative process privilege

because Mr. Casey prefaced his presentation at the Roundtable by insisting that his comments represented his own opinions and "do not necessarily represent the views of the Commission or any other member of Staff." Mr. Casey also emphasized that "my comments should not be relied upon as the basis for determining a registrant's accounting policy or practice." *Id.* Defendants reason that the SEC cannot disclaim any official connection to Mr. Casey's presentation, and then contend that Mr. Casey's antecedent communications with Commission personnel were "pre-decisional" and "deliberative" for purposes of the privilege.

Some observations concerning Mr. Casey's speech help frame the court's analysis. First, many of Mr. Casey's remarks took the form of questions, rather than specific guidance. While Mr. Casey raised several issues during the course of his remarks, he suggested that these were matters for the Emerging Issue Task Force to address. Mr. Casey consistently couched his remarks in the first-person, with phrases such as "I think," "my thoughts," "my understanding," and "it appears to me." Mr. Casey appeared to make reference to the SEC staff only three times over the course of a seven-page, single-spaced speech. At one point, in suggesting characteristics that might distinguish a service lease from a service contract, Mr. Casey observed that while "the [SEC] staff has not objected to such a model" in "prior registrant matters," his model "raises a number of questions which the staff has not yet addressed in live registrant fact patterns." Later in the same presentation, Mr. Casey alluded to a hypothetical situation in which a "capacity provider" enters into a contract that bifurcates the purchaser's payments between the implicit right to use the land, the right to use the conduit and the right to use the fiber. Casey noted in passing that "the staff has not seen this hypothetical transaction in a live fact pattern." Finally, Mr. Casey noted that "the staff is seeing with increasing frequency, primarily in the

technology-related industries, contracts with multiple elements." In addressing how lease payments might be bifurcated in these multiple element contracts, Casey simply observed that "the staff approaches the issue from the perspective of the capacity purchaser, not the capacity provider."

If Defendants are interested in exploring Mr. Casey's personal views on accounting practices relating to IRU transactions, they have his remarks before the Global Capacity Providers Roundtable. More to the point, it seems that Defendants want to discover how or to what extent Mr. Casey's remarks may have been shaped or influenced by communications he had with Commission personnel. That objective falls squarely within the deliberative process privilege, particularly as Mr. Casey's remarks clearly implied that the Commission's staff was still developing positions on many of the issues raised in the speech.

My own research has not found any reported cases that are clearly on point. In *Carter, Fullerton & Hayes, LLC v. Federal Trade Commission*, 520 F. Supp.2d 134, 144 (D.D.C. 2007), the court concluded that the deliberative process privilege would extend to hand-written notes and an outline prepared by a senior agency employee in deciding the final content of a "Commission sanctioned speech" presented to an industry group. That case apparently did not involve the sort of disclaimer that qualified Mr. Casey's remarks on November 16, 1999. Without any precedents directly on point, the court must look to the objectives underlying the privilege.

The deliberative process privilege is intended to insulate government employees from the chilling effect that would likely occur if internal agency deliberations were opened up to public scrutiny. *Hunton & Williams, LLP v. Department of Justice*, 2008 WL 906783, *8 (E.D. Va.

2008). *See also American Federation of Government Employees, AFL-CIO, Local 1164 v. Department of Health & Human Services*, 63 F. Supp.2d 104, 107 (D. Mass. 1999) (suggesting that the deliberative process privilege prevents "the disruption of a free flow of ideas, opinions, advice and frank discussion within agencies concerning their policies and programs"). This chilling effect is no less likely because Mr. Casey was willing to express his own views in a public forum. Mr. Casey specifically told his audience that his remarks did not necessarily reflect the views of the Commission or its staff, and that the audience should not rely upon his speech as the basis for determining any accounting policy or practice. I do not find that Mr. Casey's personal assessment of accounting practices gives the Defendants carte blanche to invade the internal deliberations of the Commission and its staff. I will uphold the SEC's assertion of privilege as to questions relating to Mr. Casey's speech.

     D.     *Communications Regarding Morrissey's March 2002 Congressional Remarks*

Defendants object to the SEC's assertion of the deliberative process privilege in response to questions posed to Mr. Hardiman relating to prepared remarks that John Morrissey, the SEC's Deputy Chief Accountant, gave before Congress on March 21, 2002. *See* Exhibit 5, appended to Defendants' Memorandum in Support. During his deposition, Mr. Hardiman testified that he could not recall whether he was asked to review Mr. Morrissey's remarks prior to March 21, 2002. Mr. Hardiman was then asked to read that portion of Mr. Morrissey's "Conclusion" wherein Morrissey states that "many of the accounting issues surrounding the accounting for telecommunications capacity contracts are complex." When asked at his deposition whether the Division of Corporation Finance agrees with Mr. Morrissey's statement, Hardiman was instructed not to answer on the basis of privilege. Shortly thereafter, Mr. Hardiman was asked

18

whether the Division agreed that accounting issues, including GAAP accounting issues, relating to telecommunications capacity contracts were complex.  Again, counsel for the SEC asserted the deliberative process privilege.

In his written remarks before the Committee on Financial Services' Subcommittee on Oversight and Investigations, Mr. Morrissey stated that his testimony would address the accounting of IRU sales by providers of telecommunications capacity, the accounting for nonmonetary transactions, including swaps, and the reporting of pro-forma financial information. While Mr. Morrissey made clear that his written statement would be confined to the public record, he did discuss at length the Commission's perspective on accounting issues relating to IRU transctions.  Defendants argue that any internal communications regarding Mr. Morrissey's remarks do not fall within the deliberative process privilege because the SEC cannot "pinpoint an agency decision or policy" regarding IRU accounting issues to which Mr. Morrissey or Mr. Hardiman contributed.

Mr. Morrissey testified on March 21, 2002, "on behalf of the Securities and Exchange Commission."[5]  In his remarks, Morrissey acknowledged the complexity of revenue recognition issues related to an IRU transaction.  Moreover, Mr. Morrissey indicated that those issues were further complicated by differing criteria that would apply if the leased asset was considered

---

[5]While Defendants wish to know whether the Division of Corporation Finance concurred with Mr. Morrissey's remarks concerning the "complexity" if IRU accounting, I note that the instant action was brought by the Securities and Exchange Commission, not the Division of Corporation Finance specifically.  To the extent that Mr. Morrissey's congressional testimony was made in a "representative capacity" or his testimony was "authorized" by the SEC, it would seem to fall within the ambit of Rule 801(d)(2) of the Federal Rules of Evidence.  If relevant at all, Morrissey's congressional testimony would constitute non-hearsay admissible against the SEC.  Defendants' "need" for the privileged evidence may be ameliorated by the Federal Rules of Evidence.

equipment or real estate.  Mr. Morrissey acknowledged that over time the accounting rules applicable to IRU transactions had evolved along with the service offerings of capacity providers, and suggested that "other issues on the EITF's current agenda could have an impact on the industry's accounting practices."  Relying on the case law previously cited, I will sustain the SEC's assertion of privilege as to those deposition questions bearing on Mr. Morrissey's congressional testimony and related internal agency deliberations.

        *E.       Defendants' Showing of Need*

Defendants argue that even if the disputed testimony falls within the deliberative process privilege, their "need for the evidence overrides" the SEC's interest in maintaining confidentiality.  *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (noting that the deliberative process privilege may be overcome by a sufficient showing of need).  *See also Center for Biological Diversity v. Norton*, 336 F. Supp.2d 1155, 1161 (D.N.M. 2004) (the court must determine whether the need for the evidence overrides the government's need to maintain confidentiality).   In support of this argument, Defendants argue that

> information in response to the questions at issue . . . could not be more relevant to the defense in this case.  To the extent that internal SEC communications (written or verbal) demonstrate, for instance, a recognition that the accounting issues were complex and/or required the exercise of subjective judgment, that there was a lack of specific accounting guidance in these areas, that there was a degree of uncertainty about how the guidance that did exist should be applied, that there was a difference of opinion internally at the SEC about how existing accounting guidance should be applied, that the SEC knew of the complexity and uncertainty and yet did not provide guidance, that guidance was evolving, or that individuals within the SEC considered it appropriate to recognize revenue on IRU transactions up front or to recognize a gain on the swap of fiber (to name just some areas), these communications certainty are relevant and important to Defendants.

*See* Defendants' Memorandum in Support, at 5-6.

In evaluating the Defendants' claim of need, the court must consider various factors: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation; (4) the role of the government in the litigation; and (5) the possibility that disclosure may hinder or discourage frank and independent discussions among agency staff in the future. *See Cobell v. Norton*, 213 F.R.D. at 5. Case law recognizes that Defendants have a significant burden in overcoming the SEC's assertion of privilege. *See Pacific Gas & Electric Company v. United States*, 71 Fed. Cl. 205, 211 (Fed. Cl. 2006) (holding that plaintiff had to make a showing of substantial need in order to succeed in compelling production of documents as to which the government invoked the deliberative process privilege); *Moreland Properties, LLC v. City of Thornton*, 2007 WL 2523385, *3 (D. Colo. 2007) (noting that the deliberative process privilege should be overridden only with a "strong showing by the party seeking to overcome the privilege that the requested information is very important to the proper resolution of its case").

This court does not question the seriousness of this case, or the parties' zealous advocacy. As the named plaintiff and the agency charged with protecting the investing public, the SEC unquestionably has a significant role in the litigation. *See Securities and Exchange Commission v. Kaplan*, 397 F. Supp. 564, 576 (E.D.N.Y. 1975) ("The Securities and Exchange Commission is an independent regulatory agency . . . charged with the primary responsibility of enforcing the Securities Act of 1933 and the Securities Exchange Act of 1934."). I also credit Mr. Minton's assertion that overriding the deliberative process privilege in this case would have a chilling effect on internal discussions and the free exchange of ideas within the Commission.

Ultimately, the court's balancing analysis turns on the relevance of the withheld

testimony and the availability of that information from other sources. To the extent that Defendants seek to show at trial that there was a "lack of specific accounting guidance" relating to IRU transactions, that "guidance was evolving," that the SEC had failed to "provide guidance," or that "there was a degree of uncertainty about how the guidance that did exist should be applied," that evidence presumably can be elicited from various sources. Defendants concede as much in their papers. *See* Defendants' Reply in Support of Motion to Compel, at 6 (acknowledging that FASB staff member John Hertz, and accountants at KPMG and Arthur Anderson have testified about the complexity of IRU accounting and the lack of guidance from the SEC on the subject during the relevant period). If Defendants' proffered evidence accurately reflects accounting practices during the relevant time period, it should be possible to elicit those facts from Qwest's current or former employees, the company's outside accountants, representatives from the private entities charged with establishing accounting standards, or retained experts. While the Defendants may see some tangential benefit in discovering the views of individual SEC staff members, the court's balancing analysis has to weigh the competing interests of the parties. The undisputed availability of other witnesses weighs in favor of upholding the assertion of privilege.

I also find that it is not necessary to override the deliberative process privilege in order to show that "accounting issues [relating to IRU transactions] were complex and/or required the exercise of subjective judgment." The United States Supreme Court in *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 101 (1995) recognized that

> GAAP is not the lucid or encyclopedic set of pre-existing rules that [some] might perceive it to be. Far from a single source accounting rulebook, GAAP "encompasses the conventions, rules, and procedures that define accepted

accounting practice at a particular point in time. GAAP changes and, even at any one point, is often indeterminate. "[T]he determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles. There are 19 different GAAP sources, any number of which might present conflicting treatments of a particular accounting question. When such conflicts arise, the accountant is directed to consult an elaborate hierarchy of GAAP sources to determine which treatment to follow.[6]

Defendants can develop all of these nuances without the need for testimony from SEC employees.[7]

The court does not discount the possibility that there may have been "uncertainty" among Commission personnel regarding the accounting treatment for IRU transctions in general or IRU transactions involving a specific company under particular circumstances. It may well be that "there was difference of opinion internally at the SEC about how existing accounting guidance should be applied." However, I have significant doubts whether such evidence would be admissible at trial. I fail to see how personal opinions held by individual Commission staff members would be relevant to the claims in this case, particularly if those opinions could not be attributed to the Commission itself or were never communicated to anyone outside the confines

---

[6]I note in passing, however, that in another case involving IRU transactions, the court observed that "[e]ven assuming . . . that the Companies' accounting for IRUs was arguably consistent with the terms of certain specific accounting standards, this would not insulate them or their accountants as a matter of law from liability under the securities laws, because under both GAAP and the securities laws, business entities and their accountants are required to provide whatever additional information would be necessary to make the statements in their financial reports fair and accurate, and not misleading." *In re Global Crossing Ltd. Securities Litigation*, 322 F. Supp.2d 319, 340 (S.D.N.Y. 2004).

[7]For example, the FASB staff in late 1999 felt that "the issues raised by the IRU transactions are complex and reside at the intersection of FAS 13, FAS 98 and FAS 66; difficult literature to navigate. . . . As it is not clear to us how the relevant literature should be interpreted in the fact patterns presented by the IRU transactions, we believe that the issues should be resolved by the Emerging Issue Task Force." *See* Exhibit 3, appended to Defendants' Memorandum in Support.

of the Commission. *Compare Lofton v. Secretary of Department of Children and Family Services*, 358 F.3d 804, 824 n.22 (11th Cir. 2004) (in rejecting proffered deposition testimony from agency personnel, noted that "even if those statements of personal opinion could be charged" to the Department of Children and Family Services, the opinions would be irrelevant to whether the state legislature properly enacted the challenged statute); *United States v. Ebens*, 800 F.2d 1422, 1442 (6th Cir. 1986) (found no error where trial court excluded as irrelevant a letter written by the United States Attorney expressing his personal opinion that there was insufficient evidence to support the Department of Justice's prosecution in that case), *abrogated on other grounds*, 485 U.S. 681 (1988). *Cf. Pennzoil Co. v. Department of Energy*, 680 F.2d 156, 161 n.8 (Temp. Emer. Ct. App. 1982) ("The 'interpretation given by an individual member of a Board or its attorneys is not, we think, to be taken as that official kind of interpretation to which courts must pay attention'").

On balance, I conclude that overriding the deliberative process privilege on the possibility of "uncertainty" within Commission's staff would effectively undermine the very purpose underlying the privilege. *Cf. Judicial Watch, Inc. v. Clinton*, 880 F. Supp. at 13 (acknowledging that the "disclosure of this type of deliberative material inhibits open debate and discussion and has a chilling effect on the free exchange of ideas"); *Abraham Fruchter & Twersky LLP v. U.S. Securities and Exchange Commission*, 2006 WL 785285, *3 (S.D.N.Y. 2006) ("the rationale behind this privilege is that 'officials will not communicate candidly among themselves if each remark is a potential items for discovery and front page news'").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel the Rule 30(b)(6) Witnesses of

the SEC Division of Corporation Finance and Office of Chief Accountant to Answer Questions

That They Were Directed By SEC Counsel Not To Answer on Ground of Deliberative Process

Privilege and to Compel the SEC to Produce Related Documents Previously Withheld on the

Basis of Deliberative Process Privilege (doc. # 396) is DENIED.


DATED this 29th day of January, 2009.

BY THE COURT:


_s/Craig B. Shaffer_____
Craig B. Shaffer
United States Magistrate Judge