IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No.  05-cv-480 MSK-CBS

SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

v.

JOSEPH P. NACCHIO,
ROBERT S. WOODRUFF,
AFSHIN MOHEBBI,
JAMES J. KOZLOWSKI,
FRANK T. NOYES,

                              Defendants.

---

**SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT NACCHIO**

---

Plaintiff, Securities and Exchange Commission, hereby moves for partial summary judgment against defendant Joseph Nacchio based on collateral estoppel arising from his criminal conviction for insider trading.  Specifically, the Commission moves for summary judgment on: 1) its Third Claim for Relief, which alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, on the basis of defendant Nacchio's insider trading as alleged in paragraphs 145 and 154 of the Commission's Corrected Second Amended Complaint;[1] 2) on its request for an

---

[1] The Commission is aware that motions for partial summary judgment on some, but not all, legal theories arising from a single factual scenario are not favored.  This motion seeks summary judgment on the only legal theory arising from the factual scenario set forth herein, although the Commission has additional claims based on facts not at issue in this motion.

injunction against defendant Nacchio; and 3) on its request that defendant Nacchio be barred from acting as an officer or director of a public company.

## STATEMENT OF UNDISPUTED FACTS

I.   UNITED STATES V. NACCHIO

1. On December 20, 2005, a federal Grand Jury returned an indictment against defendant Nacchio alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder due to trading in the securities of Qwest Communications while in possession of material non-public information. Exhibit A.

2. On April 19, 2007, a jury found defendant Nacchio guilty of 19 counts of insider trading. Exhibits B, C.

3. Defendant Nacchio has filed various motions since his conviction, including an appeal to the Tenth Circuit, which was denied February 15, 2009. *United States v. Nacchio*, 519 F.3d 1140 (10th Cir. 2009), a Petition for Writ of Certiorari, pending before the United States Supreme Court, and a Motion for New Trial, which was filed March 5, 2009, and is pending before this Court.

II.   SEC V. NACCHIO

4. On March 15, 2005, the Securities and Exchange Commission filed its complaint in this action naming Joseph Nacchio, among others, as a defendant.

5. The Commission alleged that, in connection with his employment at Qwest Communications, Inc., defendant Nacchio had committed violations of the securities laws, including violations of Section 10(b) of the Exchange Act and Rule 10b-5. [Docket #001]

2

6. On July 15, 2008, with leave of court, the Commission filed an amended complaint in this matter. [Docket # 432].

**CLAIMS UPON WHICH JUDGMENT IS SOUGHT**

I.  **PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS THIRD CLAIM FOR RELIEF BASED ON COLLATERAL ESTOPPEL**

  A.  Burden of Proof and Elements

Summary judgment based on collateral estoppel is permitted in the Tenth Circuit.  *See Roth v. Green*, 466 F.3d 1179 (10th Cir. 2006).  To prevail on summary judgment based on collateral estoppel in the Tenth Circuit the Commission must show that: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir. 1992).

When a party seeks summary judgment based on the doctrine of collateral estoppel, the nonmoving party may not defeat the motion simply by establishing that it has evidence that conflicts with the factual conclusions of the trier of fact in the previous case.  Even if the nonmoving party produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case. *Murdock*, 975 F.2d at 686, *citing Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *see also S.E.C. v. Black*, 2008 WL 4394891 at *4 citing *Prochotsky v. Baker & McKenzie,* 966 F.2d 333, 334 (7th Cir.1992); see also *U.S. v. Wight*, 839 F.2d 193, 196 (4th

3

Cir. 1987) ("The doctrine of collateral estoppel may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceeding."). The nonmoving party may oppose the motion by arguing that the moving party has not met all elements of collateral estoppel. But if collateral estoppel does apply, it forecloses litigation of issues that the prior court actually and necessarily decided. *Murdock*, 975 F.2d at 686.

B.     Elements About Which There Can Be No Dispute

Element 1.     The Issues Are Identical

The indictment against defendant Nacchio charged Nacchio with violating Exchange Act Section 10(b) and Rule 10b-5. Exhibit A, ¶ 9. The indictment alleged that no later than December 4, 2000, through and including September 10, 2001, Nacchio was aware of material, non-public information about Qwest's business, including, but not limited to: (a) that Qwest's publicly stated financial targets, including its targets for 2001, were extremely aggressive and a "huge stretch"; (b) that in order to achieve its publicly stated financial targets for 2001, Qwest would be required to significantly increase its recurring revenue business during the first few months of 2001; (c) that Qwest's past experience or "track record" in growing recurring revenue at a sufficient rate to meet its publicly stated financial targets was poor; (d) that Qwest's recurring revenue business was underperforming from early 2001 and was not growing at a sufficient rate to meet Qwest's publicly stated financial targets; (e) that there were material undisclosed risks relating specifically to Qwest's recurring and non-recurring revenue streams that put achievement of Qwest's 2001 publicly stated financial targets in

4

jeopardy; (f) that the gap between Qwest's publicly stated financial targets and Qwest's recurring revenue was increasing, thus increasing Qwest's reliance on risky and unsustainable one-time transactions; and (g) that there would be insufficient nonrecurring revenue sources to close the gap between Qwest's publicly stated financial targets and its actual performance.  Exhibit A, ¶ 6.

The indictment further alleged that beginning on or about January 2, 2001, and continuing through and including September 10, 2001, Nacchio, in the District of Colorado and elsewhere, did knowingly and willfully, directly and indirectly, by the use of means and instrumentalities of interstate commerce and of the mails, and the facilities of a national securities exchange, use and employ, in connection with the purchase and sale of a security registered on a national securities exchange, a manipulative and deceptive device, scheme, artifice or contrivance to defraud in contravention of Rule 10b-5 prescribed by the United States Securities and Exchange Commission and that more specifically, Nacchio, in furtherance of this scheme to defraud, did knowingly and willfully sell, using the instrumentalities of interstate commerce and the facilities of a national securities exchange, more than $100 million worth of Qwest common stock on the dates and in the amounts set forth in Counts 1 through 42 while aware of and on the basis of material, non-public information.  Exhibit A, ¶ 9.  Counts 24 through 42 of the indictment encompass dates between April 26, 2001 and May 29, 2001. Exhibit A, ¶ 9.

Likewise, the Commission's complaint alleges that during April through May 2001, Nacchio made profits of about $52 million from the sale of Qwest

5

stock, and that during that entire period, while Nacchio assured investors that Qwest was on track to meet its publicly-stated financial targets, he was aware that Qwest's revenue from recurring sources had not increased sufficiently during the first quarter of 2001 in order for Qwest to meet its targets and that Qwest's revenue from one-time sources would not be enough to fill the gap between Qwest's actual performance and its targets. [Docket #432, ¶ 31, 145] The Commission's complaint further alleges that Defendant Nacchio violated and unless restrained and enjoined will in the future violate Exchange Act Section 10(b) and Rule 10b-5. [Docket #432, ¶ 31, 154]. Counts 24 through 42 of the Indictment charged Nacchio with violating the same antifraud provisions, Exchange Act Section 10(b) and Rule 10b-5, as are alleged in the Commission's complaint. [Exhibit A, ¶9; Docket #432, ¶ 31, 145, 154].

After a criminal trial, the jury found Nacchio guilty of Counts 24 through 42 of the indictment. Exhibits B, C. The criminal conviction under Section 10(b) of the Exchange Act required the same elements as the civil charge of Section 10(b) of the Exchange Act upon which the Commission is now moving for summary judgment. The conduct which served as the basis for the criminal convictions is also the same conduct upon which paragraph 145 of the Commission's complaint is based. The only differences between the criminal charges and civil charges are the burdens of proof (the criminal conviction requires a heavier burden than the civil judgment) and the requisite level of intent (the criminal conviction necessitated a showing of knowing or willful conduct while the civil case may be proven by a lesser showing of recklessness). *See*

6

*First Interstate Bank, N.A., v. Pring*, 969 F.2d 891, 903 (10th Cir. 1992), *rev'd on other grounds sub nom*, *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994)

      Element 2.    <u>The Prior Action Has Been Finally Adjudicated</u>

As outlined above, on April 19, 2007, a jury found defendant Nacchio guilty of 19 counts of insider trading. Since that time numerous appeals have been filed by defendant Nacchio. Nonetheless, the fact that defendant Nacchio has appealed his criminal conviction "does not affect the finality of that judgment for purposes of collateral estoppel; indeed, 'the pendency of a criminal appeal generally does not deprive a judgment of its preclusive effect.'" *S.E.C. v Resnick*, 2008 WL 2346021, at *2, (D. MD. 2008) *citing United States v. Int'l Brotherhood of Teamsters,* 905 F.2d 610, 621 (2d Cir.1990*). See* also *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188-89, 61 S.Ct. 513, 85 L.Ed. 725 (1941) ("the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not-until and unless reversed-detract from its decisiveness and finality"); *SEC v. Blackwell*, 477 F.Supp.2d 891, 901 (S.D.Ohio 2007) (finding that it would "halt the process of justice" to allow defendants "to avoid the preclusive effect of the Criminal Action until their appeal is finalized"); *SEC v. Pace*, 173 F.Supp.2d 30, 33 (D.D.C.2001) ("The fact that [defendant's] appeal from his conviction is still pending does not affect the application of collateral estoppel."); *18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc.* § 4433 (3d ed. 2008); see generally *Emich Motors Corp.*, 340 U.S. at 568, 71 S.Ct. 408 ("It is

well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding.").

Along the same lines, Courts in other cases have held that despite the fact that a criminal sentencing court stayed enforcement of a sentence pending appeal, the criminal conviction is final. *S.E.C. v. Resnick*, 2008 WL 2346021, at *2. Here the criminal sentence was initially stayed, but has since been imposed and defendant Nacchio is currently incarcerated at the Schuylkill Federal Correctional Institution. As a result, Nacchio should not be able to avoid the preclusive effect of his criminal conviction for an extended period by extending his criminal appeals. If allowed, such action would force this court to either stay proceedings in this matter indefinitely or relitigate the facts underlying the claims at issue. See *S.E.C. v. Resnick*, 2008 WL 2346021, at *3, see also *S.E.C. v. Blackwell*, 477 F.Supp.2d 891, 901 (S.D.Ohio 2007) (noting that if the underlying conviction is overturned, the defendants "may invoke Rule 60(b) of the Federal Rules of Civil Procedure and obtain relief from the civil judgment.").

Element 3.   It is the Same Party

The third element of collateral estoppel requires that the party against whom the doctrine is invoked be a party or in privity with a party to the prior adjudication. Here Nacchio, the party against whom the Commission seeks summary judgment in this case, was the only defendant in the prior criminal case. As a result, defendant Nacchio is bound by the prior judgment. *Murdock*, 975 F.2d at 688.

Element 4.   <u>There Has Been A Full And Fair Opportunity To Litigate The Issue</u>

In determining whether a litigant has had a full and fair opportunity to litigate an issue for purposes of collateral estoppel, the key is the objective fullness and fairness of the *opportunity* to litigate as opposed to the subjective fullness and fairness of the outcome of the litigation.  *S.E.C. v. Resnick*, 604 F. Supp. 2d 733 779-780 (D. Md. 2009).  "[W]here the non-moving party had the incentive to litigate vigorously in the prior proceeding, and was able in that proceeding to examine the evidence against him, present his own evidence, cross-examine witnesses, be represented by competent counsel, and otherwise enjoy the protections of due process as relates to the issue under dispute, he will generally be considered to have had a full and fair opportunity to litigate that issue for purposes of collateral estoppel."  *S.E.C. v. Resnick*, 604 F. Supp. 2d at 780.  *See Parklane Hosiery,* 439 U.S. 322, 332-33 (1979) (finding the non-moving party to have had a full and fair opportunity to litigate where, in the previous proceeding, he had "every incentive to litigate ... fully and vigorously" and had enjoyed all the "procedural opportunities" that would be available to him in the second proceeding); *Blackwell,* 477 F.Supp.2d at 901-02; *cf. Murphy v. Gallagher,* 761 F.2d 878, 883 (2d Cir.1985).

Here defendant Nacchio had every incentive to vigorously litigate his criminal case because his liberty was at stake.  Nacchio was able to choose his own counsel, examine the evidence against him, engage in extensive pretrial motions practice, present his own evidence and cross-examine witness at his trial.  There is no reason to believe that defendant Nacchio did not enjoy the

9

same procedural opportunities that would be afforded him in this matter.  Despite the fact that Nacchio may not agree with the outcome of his criminal trial, he had a full and fair opportunity to litigate the issues relevant to that case.  As those issues are the exact same as the issues underlying the claims in paragraphs 145 and 154 of the Corrected Second Amended Complaint, defendant Nacchio has also had an opportunity to fully and fairly litigate the matters underlying this Motion for Partial Summary Judgment.

II.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS REQUEST FOR A PERMANENT INJUCTION

A.     Burden of Proof and Elements

It is appropriate to grant summary judgment on the issue of a permanent injunction based upon a criminal conviction.  *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993).  Section 21 (d) of the Exchange Act provides that upon a "proper showing" the Commission may obtain a permanent injunction against any person who is engaged in a violation of any of the provisions of the securities acts or regulations. 15 U.S.C. §78u(d)(l). A permanent injunction is appropriate where the SEC shows "a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future."  *SEC v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993).  The Court may infer a likelihood of future violations from the defendant's past illegal conduct, *see SEC v. Washington County Utility*, 676 F.2d 218, 227 (6th Cir. 1982); *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 176 (9th Cir. 1987).  In addition, a defendant's degree of scienter "bears heavily" on the decision whether to issue

10

the injunction. *Pros Int'l*, 994 F.2d at 769 (quoting *SEC v. Haswell*, 654 F.2d 698, 699 (10th Cir. 1981).

      B.     <u>Elements About Which There Can Be No Dispute</u>

<u>The Commission has made a proper showing to obtain an Injunction</u>

Defendant Nacchio's conviction demonstrates a reasonable and substantial likelihood that, if not enjoined, he will violate securities laws in the future. It establishes that he willfully and intentionally violated the securities laws 19 times in 33 days. Exhibit A and Exhibit B. His violations were serious, involving the misuse of information entrusted to him as the Chief Executive Officer of Qwest Communications, Inc. As is evident from the sheer volume of trades, Nacchio's violations were numerous and involved a high degree of scienter. In addition, the amount of money he gained as a result of the fraud was substantial, over $40 million. Exhibit C. Finally, defendant Nacchio has not acknowledged his wrongdoing, nor has he expressed any credible assurance that he will not engage in future violations of the securities laws. Accordingly, the Commission is entitled to summary judgment on its request for a permanent injunction.

II.    <u>PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS REQUEST FOR AN OFFICER AND DIRECTOR BAR</u>

      A.     <u>Burden of Proof and Elements</u>

Securities Act Section 20(e) and Exchange Act Section 21(d)(2) authorize courts to bar an individual from serving as an officer or director of a publicly held company if the Commission shows that the individual's conduct demonstrates "unfitness" to serve in such capacity. 15 U.S.C. § 77t(e); 15 U.S.C. § 78u(d)(2).

Courts have often considered six factors when deciding whether to impose such a bar: (1) the egregiousness of any underlying securities law violation, (2) the defendant's repeat offender status, (3) the defendant's role or position at the time of the violation, (4) the degree of scienter, (5) the defendant's economic stake in the violation, and (6) the likelihood that misconduct will occur again. *SEC v. Wolfson,* No. 02 Civ. 1086(TC), 2006 WL 1214994, *10 (D.Utah, May 5, 2006). These factors need not all be present, nor are they the only factors that the Court may consider.  *SEC v. Patel*, 61 F.3d 137, 141 (2nd Cir. 1995).

B.     <u>Elements About Which There Can Be No Dispute</u>

<u>The Commission has made a proper showing to obtain a bar</u>

Defendant Nacchio's conviction establishes that, while he was the Chief Executive Officer of Qwest Communications, Inc., he willfully and intentionally violated the securities laws repeatedly, 19 times in 33 days, trading on inside information to reap proceeds of over $40 million.  Exhibit C, Document 468-2, p. 2 - 3.  His violations were serious, numerous, involved a high degree of scienter. He was the most senior officer of the company at the time of his violations and he had a large economic stake in the violations.   As indicated above, the Commission is unaware of any acknowledgment of wrongdoing on the part of defendant Nacchio and believes that a bar is necessary to assure this type of conduct does not occur again.   As a result, the Commission is entitled to summary judgment on its request for a bar.

## **CONCLUSION**

For the reasons stated above, the Securities and Exchange Commission respectfully requests that this Court grant summary judgment on the Commission's Third Claim for Relief, which alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, on its request for an injunction against defendant Nacchio, and on its request that defendant Nacchio be barred from acting as an officer or director of a public company. The charges of which defendant Nacchio has been criminally convicted are identical to the claim upon which the Commission is moving for summary judgment. Nacchio is collaterally estopped from contesting the Commission's claim and summary judgment should be granted.

DATED: June 30, 2009

Respectfully submitted,

s/ Polly Atkinson
Polly Atkinson
Thomas Krysa
Christopher Friedman
Barbara Wells
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, Colorado 80202
Telephone: 303.844.1000
Attorneys for Plaintiff

13

**Certificate of Service**

I hereby certify that on June 30, 2009, I caused a true and correct copy of the foregoing to be filed electronically using the CMF/ECF system, which will send notification to the following:

| *Attorneys for Joseph P. Nacchio* | *Attorneys for Robert S. Woodruff* |
|---|---|
| Edward S. Nathan, Hebert J. Stern Jeffrey Speiser, Joel M. Silverstein, Terry L. Trantina and Mark Rufolo **Stern & Kilcullen** 75 Livingston Avenue Roseland, New Jersey 07068 Email: enathan@sgklaw.com Email: hstern@sgklaw.com Email: jspeiser@sgklaw.com Email: jsilverstein@sgklaw.com Email: mrufolo@sgklaw.com Sean M. Berkowitz, Everett C. Johnson, Jr. and Nathan H. Seltzer **Latham & Watkins, LLP-DC** 555 11th Street NW Washington, DC 20004-1304 Email: sean.berkowitz@lw.com Email: everett.johnson@lw.com Email: nathan.seltzer@lw.com | James Miller **Clifford Chance US LLP** 31 West 52nd Street New York, New York 10019-6131 Email: james.miller@cliffordchance.com Elizabeth A. Starrs and Daniel A. Wartell, **Starrs Mihm & Caschette LLP** 707 Seventeenth Street, Suite 2600 Denver, Colorado 80202 Email: estarrs@starrslaw.com Email: daniel.wartell@starrslaw.com And David Meister, David L. Cook, Steven Glaser **Skadden, Arps, Slate, Meagher & Flom LLP** Four Times Square New York, New York  10036 Email: david.meister@skadden.com |

| ***Attorneys for Afshin Mohebbi*** | ***Attorneys for James J. Kozlowski*** |
|---|---|
| Paul R. Grand, Kristy Watson Milkov, Barbara C. Moses and Jasmine M. Juteau<br>**Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.**<br>565 Fifth Avenue, Floor 9<br>New York, New York  10009<br>Email: pgrand@maglaw.com<br>Email: kmilkov@maglaw.com<br>Email: jachilles@maglaw.com<br>Email: bmoses@maglaw.com<br>Email: jjuteau@maglaw.com<br>And<br>Patrick J. Burke, Dean S. Neuwirth<br>**Burke & Neuwirth P.C.**<br>303 16th Street, Suite 200<br>Denver, Colorado 80202<br>Email: Patrick-J-Burke@msn.com<br>Email: deanneuwirth@comcast.net | Kevin D. Evans, Phillip L. Douglass<br>**Steese & Evans, P.C.**<br>6400 South Fiddlers Green Circle<br>Suite 1820<br>Denver, Colorado 80111<br>Email: kdevans@s-elaw.com<br>Email: pdouglass@s-elaw.com |
| ***Attorney for Frank T. Noyes*** | ***Department of Justice (Intervenor)*** |
| Forrest W. Lewis<br>**Forrest W. Lewis, P.C.**<br>1600 Broadway, Suite 1525<br>Denver, Colorado 80202<br>Email: flewispc@aol.com | Kevin T. Traskos, Peter D. Leary and Caroline Lewis-Wolverton **U.S. Attorney's Office – Denver, Colorado**<br>1225 Seventeenth Street, Suite 700<br>Denver, Colorado 80202<br>Email: kevin.traskos@usdoj.gov<br>Email: peter.leary@usdoj.gov<br>Email: caroline.lewis-wolverton@usdoj.gov |

s/ Polly Atkinson